G.L. Harris v. American Protection Ins. Co.

 

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-03-228-CV

G.L. HARRIS APPELLANT

AND APPELLEE

V.

AMERICAN PROTECTION  APPELLEE

INSURANCE COMPANY AND APPELLANT

------------

FROM THE 236TH DISTRICT COURT OF TARRANT COUNTY

------------

OPINION

------------

Introduction

This case arises from two insurance claims for successive casualty losses to the roof of a shopping mall.  In six issues, appellant G.L. Harris asserts that the trial court erred by rendering a take nothing judgment against him because he proved his hail damage breach of contract and articles 21.55 and 21.21 claims as a matter of law, the trial court erred by refusing to submit his requested jury question on breach of contract, and the jury’s failure to find that American violated article 21.21 and its finding that Harris’s negligence caused his damages were against the great weight and preponderance of the evidence.  In a sole issue on cross-appeal, American asserts that the trial court erred in granting a directed verdict against it on its fraud counterclaim.  We will affirm.

Background Facts

On May 5, 1995, a severe hail storm damaged the roof of a vacant building known as Westridge Mall.  At the time, the shopping mall was covered by two insurance policies, one issued by appellee American Protection Insurance Company (“American”) and the other by Aetna Life & Casualty (“Aetna”).  Each policy effectively covered fifty percent of the loss
(footnote: 1) and named Southwest Portfolio (“Southwest”) as the insured.  On September 6, 1995, roofing contractor Gary Boyd discovered the hail damage during a warranty-related roof inspection.  Southwest made a claim for the hail damage under the Aetna policy on October 6, 1995.  Because it was unaware of the American policy, Aetna agreed to cover one hundred percent of the loss and settled the claim for $712,612.50.
(footnote: 2)  In accordance with the settlement agreement, Aetna paid Southwest $268,445 for the actual cash value of the loss (“ACV”) and retained $444,167.50 as the replacement cost holdback, which would be paid out as repair costs were incurred. 

Meanwhile, the insurance broker who had sold both insurance policies to Southwest notified American of the claim.  American sent a written claim acknowledgment to the broker and Aetna and assigned the file to American adjuster Dana McDade.  McDade contacted Aetna’s adjuster, who asked American to reimburse Aetna for half of the ACV it had paid to Southwest. American complied after McDade inspected the roof, reviewed documentation relied upon by Aetna’s adjuster, and talked with Aetna’s adjuster, construction consultants, and Southwest representatives.  Southwest representative Jeff Landel told McDade that the claim had already been settled with Aetna, and advised him to “stay out of it” and not do “anything that muddies up the stream” on the pending sale of the property to Harris.  Landel also expressly declined to make a claim with American and instructed McDade to resolve American’s liability for the claim directly with Aetna. 

After Southwest received the ACV payment and before any repairs were made to the roof, Southwest sold the building to Harris.  The purchase and sale agreement assigned to Harris “any assignable rights to the insurance claim paid or payable as a result of the hail damage to the roof of the Project occurring on or about May 5, 1995.”  Pursuant to this agreement, Harris was credited at closing with $268,445, the amount of the ACV payment. 

The settled claim assigned to Harris was based on an approved proposal from Boyd, the roofing contractor who discovered the damage.  Boyd proposed perforating the existing roof and installing a new recovery board and rubber roof.  Instead of hiring Boyd to do the repairs, Harris entered into a contract with Mike Wright under which Wright agreed to perforate the existing roof and install a recovery board and modified bitumen roof, ostensibly for $690,000. Wright replaced the roof without installing the promised recovery board. 

Harris represented to Aetna that he had incurred $690,000 in replacement costs, and Aetna released payments to cover those costs, minus the prior ACV payment and the $25,000 policy deductible.  Aetna, in turn, asked American to reimburse it for half of the replacement costs.  American did not immediately reimburse Aetna for these costs because it recognized it was in uncharted legal territory.  American questioned its liability for the replacement costs because Aetna had paid the money to Harris rather than American’s named insured, Southwest, and American had never authorized Southwest’s assignment of the policy benefits to Harris.  Despite its misgivings, American ultimately reimbursed Aetna for half of the replacement costs. 

In total, Harris received $680,260 for the hail damage claim, and American reimbursed Aetna for half of that amount.  Further, although Harris represented to Aetna that he had paid Wright $690,000 to replace the roof, he had actually paid only $375,000. 

On February 12, 1997, private adjuster Steve Mayor filed a supplemental proof of loss with Aetna on behalf of Harris, claiming a loss of over $1.8 million  allegedly caused by Wright’s faulty roof replacement.  Aetna rejected the claim and forwarded the statement of loss to American on March 10, 1997.  American contacted Mayor and asked for a copy of his scope of loss, but did nothing further when Mayor failed to provide the requested information.  

Procedural History

Harris filed suit against Aetna on March 19, 1997.  After Aetna filed a plea in abatement claiming that American was a necessary party, Harris amended his petition to add American as a defendant.  Harris alleged that American had breached its insurance contract by failing to pay policy benefits and that it had violated article 21.55 and section 4(10) of article 21.21 of the insurance code.  
See
 
Tex. Ins. Code Ann.
 art. 21.55, art. 21.21, § 4(10)
 (Vernon Supp. 2004-05)
.
  American filed a counterclaim against Harris for fraud after Wright’s deposition testimony brought Harris’s repair cost misrepresentation to light.  Aetna settled with Harris before trial. 

The suit between Harris and American was tried before a jury.  The trial court disposed of the fraud counterclaim by granting a directed verdict against American on that issue.  The jury returned a verdict finding that American had not violated article 21.21 and that Harris’s negligence had caused his damages.
(footnote: 3)  The trial court then entered a take nothing judgment against Harris. 

Breach of Contract 

In his second and third issues, Harris contends that the trial court erred in rendering a take nothing judgment against him because he proved as a matter of law that American owed him $175,000 for his hail damage claim under the terms of its policy.  American argues that Harris failed to preserve this issue for appeal, or, alternatively, that American has discharged its liability and Harris has been fully compensated for the hail damage claim.

Harris preserved this issue for appeal by moving for an instructed verdict on his article 21.55 claim at the close of evidence.  
See T.O. Stanley Boot Co. v. Bank of El Paso
, 847 S.W.2d 218, 220-21 (Tex. 1992) (holding that party may preserve complaint that liability was established as a matter of law by filing motion for instructed verdict).  Harris’s article 21.55 claim was based on American’s alleged mishandling of both the hail damage and supplemental claims.  An article 21.55 claim combines an insurer’s contractual and statutory liability into one cause of action.  
Lusk v. Puryear
, 896 S.W.2d 377, 380 (Tex. App.—Amarillo 1995, no writ).  To recover the statutory penalties available under article 21.55, an insured must first prove that the insurer is liable for the underlying claim.  
Mid-Century Ins. Co. of Tex. v. Barclay
, 880 S.W.2d 807, 811 (Tex. App.—Austin 1994, writ denied).  Therefore, Harris’s claim that American was contractually obligated to pay him half of the hail damage claim was subsumed within the hail damage portion of his article 21.55 claim and preserved by his motion for an instructed verdict on that claim. 

Turning to the merits of the issue, Harris contends that he proved as a matter of law that American owes him $175,000
(footnote: 4) for the hail damage claim.  American did not dispute below that it was liable for half of the hail damage claim, and American witness Ed Cass agreed that $175,000 accurately reflected the true amount of that liability.
(footnote: 5)  American argues, however, that it more than satisfied its liability for the hail damage claim by paying Aetna $340,130 because Aetna became subrogated to Harris’s right to recover fifty percent of his loss from American when Aetna paid one hundred percent of the hail damage claim.  American also argues that if Harris receives any additional benefits for the hail damage claim, they will constitute an impermissible double recovery.  We agree.

When two insurers have contracted to pay a loss and each insurer’s policy contains a pro rata clause, each insurer is liable to the insured only for its proportion of the loss.
(footnote: 6) 
 Employers Cas. v. Transp. Ins. Co.
, 444 S.W.2d 606, 608 (Tex. 1969); 
United States Fire Ins. Co. v. Stricklin
, 556 S.W.2d 575, 578 (Tex. Civ. App.—Dallas 1977), 
writ ref’d n.r.e.
, 565 S.W.2d 43 (Tex. 1978) (per curiam).  In that situation, the pro rata clause implements the principle of indemnity and eliminates the potential for a double recovery that would otherwise exist.  
State Farm Fire & Cas. Co. v. Griffin
, 888 S.W.2d 150, 156 (Tex. App.—Houston [1st Dist.] 1994, no writ).  Further, if an insurer overpays its share of a loss, the correct manner of adjusting for that overpayment is for the insurer to assert a contractual or equitable right of subrogation.  
Employer’s Cas. Co.
, 444 S.W.2d at 610; 
Gen. Agents Ins. Co. of Am., Inc. v. Home Ins. Co. of Ill.
, 21 S.W.3d 419, 424 (Tex. App.—San Antonio 2000, no pet.).  Whether the overpayment was voluntary is immaterial for purposes of the subrogation claim.  
See
 
Employer’s Cas. Co.
, 444 S.W.2d at 610; 
Gen. Agents Ins. Co. of Am., Inc.
 21 S.W.3d at 424
.

Subrogation is the principle under which an insurer that has paid a loss under an insurance policy is entitled to all the rights and remedies belonging to the insured against a third party with respect to any loss covered by the policy.  
Black’s Law Dictionary 
1467 (8th ed. 2004).  Application of the doctrine is said to be “the purest of equities,” and Texas courts are particularly hospitable to it.  
Interfirst Bank Dallas, N.A. v. U.S. Fidelity & Guar. Co.
, 774 S.W.2d 391, 397 (Tex. App.—Dallas 1989, writ denied).  Equitable subrogation is not dependent upon contract, but arises by operation of law or by implication in equity to prevent injustice.  
Id.

In this case, the Aetna policy contains a contractual subrogation provision that provides, in pertinent part, “[I]f any person or organization to or for whom we make payment under this policy had rights to recover damages from another, those rights are transferred to us to the extent of our payment.”  Thus, when Aetna paid the entire hail damage claim to Harris, it became equitably and contractually subrogated to Harris’s right to recover fifty percent of the loss from American.  Therefore, American discharged its liability to Harris by paying its half of the hail damage claim to Aetna.  Moreover, Harris is not entitled to receive any additional money for the hail damage claim because the loss was fully compensated by Aetna.
  See Hochheim Prairie Farm Mut. Ins. Ass’n v. Campion
, 581 S.W.2d 254, 257 (Tex. Civ. App.—Corpus Christi 1979, writ ref’d n.r.e.) (holding that insureds would be unjustly enriched if they were allowed to recover for the portion of a loss that had already been compensated by a third party).

Harris also contends that the trial court erred by failing to include his breach of contract questions
(footnote: 7) in the jury charge.  To resolve this issue, we must examine the record to determine if there is any probative evidence to support the elements of Harris’s hail damage breach of contract claim.  
See Am. Home Assurance Co. v. Brandt
, 778 S.W.2d 141, 144 (Tex. App.—Texarkana 1989, writ denied).  If there was some evidence to support it, the trial court should have submitted a breach of contract question on the hail damage claim. 
 Moore v. Lillebo
, 722 S.W.2d 683, 686-87 (Tex. 1986).

The elements of a breach of contract claim are (1) the existence of a valid contract, (2) performance or tendered performance by the plaintiff, (3) breach of the contract by the defendant, and (4) damages to the plaintiff resulting from that breach.  
Adams v. H & H Meat Prods., Inc.
, 41 S.W.3d 762, 771 (Tex. App.—Corpus Christi 2001, no pet.); 
Frost Nat’l Bank v. Burge
, 29 S.W.3d 580, 593 (Tex. App.—Houston [14th Dist.] 2000, no pet.).  Considering only the evidence and the inferences tending to support Harris’s breach of contract claim and disregarding all evidence and inferences to the contrary,
 see Moore, 
722 S.W.2d at 687, we hold that Harris failed to produce evidence to support the submission of his breach of contract questions regarding the hail damage claim to the jury.  Although there is some evidence that American was contractually liable for half of the hail damage claim, there is no evidence that American breached that obligation or that Harris suffered any damages.  To the contrary, Harris received more than he was entitled to under either insurance policy.  Because there is no evidence to support Harris’s requested breach of contract questions regarding the hail damage claim, the trial court did not err in refusing to submit them.  
S.W. Bell Tel. Co. v. Thomas
, 554 S.W.2d 672, 674 (Tex. 1977).  Accordingly, we overrule Harris’s second and third issues.

Article 21.55

In his fourth issue, Harris contends that the trial court erred in denying his motion for a directed verdict because he proved his article 21.55 claim with respect to the hail damage as a matter of law.

Article 21.55 of the insurance code is intended to ensure prompt payment of insurance claims.
  Mid-Century Ins. Co., 
880 S.W.2d at 812.  It specifies particular time periods during which an insurer must act on claims, 
Bekins Moving & Storage Co. v. Williams
, 947 S.W.2d 568, 581 (Tex. App.—Texarkana 1997, no pet.), and “requires the prompt payment or resolution of claims according to a defined timetable,”  
DeLeon v. Lloyd’s London Certain Underwriters
, 259 F.3d 344, 354 (5th Cir. 2001).
(footnote: 8)  An insurer will not be held liable for violating article 21.55 unless it is found liable for the underlying insurance claim.  
Mid-Century Ins. Co.
, 880 S.W.2d at 811; 
see also Cater v. United Svcs. Auto. Ass’n
, 27 S.W.3d 81, 84 (Tex. App.—San Antonio 2003, pet. denied) (holding that an insurance company’s good faith defense does not relieve the insurer from liability for damages for late payment, as long as the insurer is finally found liable for the claim).  Because Harris failed to prove that American was liable to him for the hail damage claim, we hold that the trial court did not err in denying Harris’s motion for a directed verdict on his article 21.55 claim.  We overrule Harris’s fourth issue.

Article 21.21

In his fifth issue, Harris contends that the trial court erred in not granting his motion for a directed verdict because he proved his article 21.21 claim as a matter of law.  Specifically, he argues that the evidence conclusively establishes that American violated article 21.21 by failing to confirm or deny its coverage of the hail damage and supplemental claims within a reasonable time and failing to attempt in good faith to effectuate prompt, fair, and equitable settlements of those claims.  Alternatively, he argues that the jury’s failure to make such findings is against the great weight and preponderance of the evidence.

If an appellant is attacking the legal sufficiency of an adverse answer to an issue on which he had the burden of proof, the appellant must overcome two hurdles.  
Victoria Bank & Trust Co. v. Brady
, 811 S.W.2d 931, 940 (Tex. 1991).  First, the record must be examined for evidence that supports the finding, while ignoring all evidence to the contrary.  Second, if there is no evidence to support the finding, then the entire record must be examined to see if the contrary proposition is established as a matter of law.  
Dow Chem. Co. v. Francis
, 46 S.W.3d 237, 241 (Tex. 2001); 
Sterner v. Marathon Oil Co.
, 767 S.W.2d 686, 690 (Tex. 1989).  The issue should be sustained only if the contrary position is conclusively established.
  Dow Chem. Co.
, 46 S.W.3d at 241-42.

In reviewing an issue asserting that an answer is “against the great weight and preponderance” of the evidence, we must consider and weigh all of the evidence, both the evidence that tends to prove the existence of a vital fact as well as evidence that tends to disprove its existence.  
Ames v. Ames
, 776 S.W.2d 154, 158-59 (Tex. 1989), 
cert. denied
, 494 U.S. 1080 (1990); 
Cain v. Bain
, 709 S.W.2d 175, 176 (Tex. 1986).  If a finding is so contrary to the great weight and preponderance of the evidence that it is manifestly unjust, the issue should be sustained, regardless of whether there is some evidence to support it.  
Kissinger v. Turner
, 727 S.W.2d 750, 752 (Tex. App.—Fort Worth 1987, writ ref’d n.r.e.); 
Watson v. Prewitt
, 159 Tex. 305, 320 S.W.2d 815, 816 (1959).

Article 21.21 of the insurance code prohibits insurers from, among other unfair settlement practices, failing to affirm or deny coverage of a claim to a policy holder within a reasonable time and failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which an insurer’s liability has become reasonably clear.  
Tex. Ins. Code Ann.
 art. 21.21, § 4(10) (Vernon Supp. 2004-05).
(footnote: 9)  We employ an objective standard to determine whether a reasonable insurer under similar circumstances would have delayed or denied payment of the claim. 
 Aranda v. Ins. Co. of N. Am.
, 748 S.W.2d 210, 213 (Tex.1988); 
Vandeventer v. All Am. Life & Cas. Co.
, 101 S.W.3d 703, 722 (Tex. App.—Fort Worth 2003, no pet.).  An insurer will be liable if the insurer knew or should have known that it was reasonably clear that the claim was covered.  
Universe Life Ins. Co. v. Giles
, 950 S.W.2d at 56; 
Vandeventer
, 101 S.W.3d at 722.  Evidence that merely shows a bona fide dispute about the insurer’s liability on the contract does not rise to the level of bad faith. 
 
Provident Am. Ins. Co. v. Castaneda
, 988 S.W.2d 189, 193 (Tex. 1998); 
Covington v. Travelers Indem. Co. of R.I./Conn.
, 122 S.W.3d 330, 333 (Tex. App.—Fort Worth 2003, no pet.).

Harris argues that American’s failure to independently adjust the hail damage and supplemental claims constituted both a failure to confirm or deny coverage and a failure to effectuate prompt and reasonable settlements of those claims.  We disagree.

With respect to the hail damage claim, the record shows that neither Southwest nor Harris made a claim for hail damage under the American policy.  In fact, Southwest deliberately settled the hail damage claim exclusively with Aetna, expressly declined to make a claim with American, and instructed American to settle its liability directly with Aetna.  American appropriately confirmed its coverage of the hail damage claim to Aetna, rather than the insured, because Aetna asked American to pay for its share of the claim and was entitled to receive payment from American through its subrogation rights.  The record simply does not support Harris’s contention that American violated article 21.21 by failing to confirm or deny coverage of the hail damage claim.

The record similarly fails to support Harris’s claim that American failed to effectuate a prompt, reasonable settlement of the hail damage claim.  The record clearly shows that soon after receiving notice of the hail damage, American adjuster McDade contacted Aetna, inspected the roof, reviewed documentation relied upon by Aetna’s adjuster, and talked with Aetna’s adjuster and construction consultants and Southwest’s representatives.  American promptly acknowledged its liability and reimbursed Aetna for half of the ACV.  It undertook additional fact gathering when Aetna requested reimbursement for the replacement cost and subsequently settled the remainder of the hail damage claim with Aetna.  Because the insured instructed American to settle its liability with Aetna and because Aetna was entitled to receive the benefits payable under the American policy for the hail damage claim, we hold that American’s actions vis a vis Aetna satisfied its duty to effectuate a prompt and reasonable settlement of the hail damage claim.

Turning to the supplemental claim, Harris complains that American’s inaction following its initial review of the proof of loss and unmet request for a copy of the scope of loss violated article 21.21.  An insurer has a duty to confirm or deny coverage of a claim to a policy holder only.  
See
 
Tex. Ins. Code Ann.
 art. 21.21, § 4(10)(v)(A).  Southwest was the named insured on the American policy.  When Harris purchased the building from Southwest, he received an assignment of the benefits paid or payable as a result of the hail damage claim.  The supplemental claim is separate from the hail damage claim because it is based on the loss caused by Wright’s faulty roof replacement rather than the hail storm.  The purchase and sale agreement does not purport to assign to Harris the right to receive benefits under Southwest’s insurance policies for future claims.

Moreover, the purchase and sale agreement carefully qualifies the rights being assigned to Harris as “those that are assignable without consent of third parties.”  This language cannot be given meaning without looking outside the agreement to the insurance policy under which Harris claimed coverage.  The American policy states that “the rights to benefits herein contained are not assignable without American’s written consent.”  Examining the record for evidence of American’s consent, we instead find a letter in which American expressly withheld its approval of the proposed assignment of the hail damage claim.  Because Harris failed to prove that he was an American policyholder, he did not establish that American had a duty to him to confirm or deny its liability for the supplemental claim.
(footnote: 10)
 Harris also failed to show that American failed to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the supplemental claim.  The evidence does not establish that American lacked a reasonable basis for denying or delaying payment of the supplemental claim.  An insurer does not have an obligation to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim unless its liability for that claim has become reasonably certain.  
Id
. 
§ 4(10).  The record contains ample evidence that American’s liability for the supplemental claim never became reasonably certain.  As discussed above, American had good reason to doubt that Southwest’s assignment to Harris of the benefits paid or payable for the hail damage claim imposed liability on American for the supplemental claim.  In addition, the American policy contained “faulty-workmanship”
(footnote: 11) and “60-day vacancy”
(footnote: 12) exclusions that cast further doubt upon American’s liability.  And the American policy appears to have expired before the supplemental claim was made.
(footnote: 13)  Because Harris did not show that a reasonable insurer would have paid the supplemental claim under these facts, he did not establish that American lacked a reasonable basis for delaying or denying payment of the supplemental claim. 

Moreover, even if American did violate article 21.21, Harris did not plead or prove any damages that are recoverable under that statute.  A plaintiff who prevails on an article 21.21 claim may recover the greatest amount of actual damages alleged and factually established to have been caused by the unfair or deceptive practice.  
Provident Am. Ins. Co. v. Castenada
, 988 S.W.2d 189, 199 (Tex. 1998).  Harris sought $175,000 for American’s handling of the hail damage claim and $733,613 for its handling of the supplemental claim.  Harris’s request for damages related to the hail damage claim is baseless because he has already recovered more than the amount of his loss from the hail damage.  The supplemental claim damages merely represent the alleged cost of replacing the roof a second time.  Harris did not prove that American’s handling of the supplemental claim caused the roof damage that necessitates such repairs; therefore, he did not establish article 21.21 damages.  
See id.

Because Harris did not prove his article 21.21 claim as a matter of law, we hold that the trial court did not abuse its discretion in refusing to grant a directed verdict on that claim.  
See Dow Chem. Co.
, 46 S.W.3d at 241-42.  Further, having reviewed all the evidence, we conclude that evidence supporting the finding that American did not violate article 21.21 by failing to confirm or deny coverage or attempt in good faith to effectuate a prompt, fair, and equitable settlement of the hail damage and supplemental claims is not so weak or the evidence to the contrary so overwhelming as to require that the jury’s verdict on the article 21.21 claim be set aside.  
See Kissinger, 
 727 S.W.2d at 752; 
Watson, 
320 S.W.2d at 816.  Accordingly, we overrule Harris’s fifth issue.

Jury’s Negligence Finding 

In his sixth and final issue, Harris contends that the jury’s finding of his negligence is against the great weight and preponderance of the evidence.  The jury found that Harris’s negligence was the proximate cause of the “damage, if any, in question.”  Neither the negligence question nor any other questions the jury was required to answer contained a damages instruction.
(footnote: 14)
 At trial, the jury heard evidence of two types of damage: damage caused by the hail storm and damage caused by Wright’s botched repair job.  The jury learned that the hail-damaged roof had been replaced and that Harris received insurance proceeds to cover the cost of the replacement roof.  From this, a rational trier of fact could have concluded that Harris did not have any outstanding damage from the hail storm.

The evidence showed that the roof’s current condition was attributable to Wright’s repair job.  Expert testimony established that the replacement roof was failing, at least in part because Wright failed to install a recovery board.   The repair bid from Boyd, upon which the hail damage claim settlement was based, called for the installation of a recovery board.  Insurer testimony established that although Aetna inspected the roof for completion before issuing its final replacement cost payment, either Harris or the lienholder, not the insurer, was responsible for making sure the repairs were done correctly.  Moreover, Harris admitted that he paid Wright approximately $315,000 less than the amount he represented to Aetna.  Although there was testimony that the cost of installing a recovery board would not have significantly impacted the cost of repairing the roof, the jury could have reasonably inferred that a $375,000 roof was inferior in quality to a $690,000 roof.  Therefore, we hold that the jury’s finding that Harris’s negligence caused “the damages in question” is not against the great weight and preponderance of the evidence.

In any event, the negligence finding had no bearing on the verdict.  A jury finding that Harris’s negligence did not cause the damages would not affect his recovery because the jury failed to assign any proportion of the liability for damages to American, and we have already held that the jury’s findings in favor of American are not against the great weight and preponderance of the evidence. 

Fraud Counterclaim

Finally, we turn to American’s sole issue on appeal, that the trial court erred in granting a directed verdict against American on its counterclaim for fraud.  American contends that its fraud claim was filed within the applicable statute of limitations and is not barred by the holding in 
Ernst & Young v. Pacific Mutual Life Insurance Co.
, 51 S.W.3d 573 (Tex. 2001).

A directed verdict is proper only under limited circumstances: (1) when the evidence conclusively establishes the right of a movant to judgment or negates the right of an opponent; or (2) when the evidence is insufficient to raise a material fact issue.  
See Prudential Ins. Co. v. Fin. Review Svcs., Inc.
, 29 S.W.3d 74, 77 (Tex. 2000); 
Ray v. McFarland
, 97 S.W.3d 728, 730 (Tex. App.—Fort Worth 2003, no pet.); 
see also 
Tex. R. Civ. P. 
268.  In reviewing a directed verdict, we must review the evidence in the light most favorable to the party against whom the verdict was rendered.  
Szczepanik v. First S. Trust Co.
, 883 S.W.2d 648, 649 (Tex. 1994).  When reviewing a directed verdict on a legal issue, we consider all the evidence presented at trial, viewing it in the losing party’s favor “as much as the record allows.”  
S.V. v. R.V.
, 933 S.W.2d 1, 8 (Tex. 1996).

A party moving for directed verdict on the ground that the claim asserted is barred by limitations must conclusively prove when the cause of action accrued and the applicable statute of limitations. 
 KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.
, 988 S.W.2d 746, 748 (Tex.1999).  When the discovery rule applies and has been raised by the nonmovant, as in this case, the movant must negate the discovery rule by proving as a matter of law that there is no genuine issue of fact about when the plaintiff discovered or should have discovered the nature of the injury.  
Tex. R. Civ. P. 
166a(c); 
Burns v. Thomas
, 786 S.W.2d 266, 267 (Tex. 1990); 
Prostok v. Browning
, 112 S.W.3d 876, 897 (Tex. App.—Dallas 2003, pet. granted). 

The statute of limitations for fraud is four years.  
Tex. Civ. Prac. & Rem. Code Ann.
 § 16.004(4).  Unlike other causes of action, limitations do not begin to accrue on fraud claims until the plaintiff discovers, or in the exercise of reasonable care and diligence should have discovered, the fraud.  
Quinn v. Press
, 140 S.W.2d 438, 440 (Tex. 1940); 
Computer Assocs. Int’l, Inc. v. Altai
, 918 S.W.2d 453, 455-56 (Tex. 1996).  Because American filed its counterclaim for fraud on November 12, 2001, it is barred by the statute of limitations only if Harris proved that American discovered or should have discovered the fraud before November 11, 1997. 

Considering the evidence in the light most favorable to American, the record shows that Harris represented the cost of roof repairs as $690,000 to Aetna on February 22, April 1, and June 24, 1996.  When American paid Aetna its half of the replacement cost, it relied on the payment requests that Harris gave Aetna and did not have any direct involvement with Harris.  After Harris filed suit against American in August 1997, American requested “all bills, invoices, bids, proposals, receipts, statements or cancelled checks reflecting any charges, expenses, costs, fees, expenditures, payments or other disbursements you claim to have incurred or which reflect the damages which form the basis of this lawsuit.”  As of August 18, 1998, approximately nine months after the date Harris contends American should have discovered the fraud, Harris continued to withhold documents reflecting the true cost of the roof repairs.  This fact raises a serious doubt about American’s ability to discover the fraud before the date in question.  American ultimately discovered the fraud July 17, 2000, when Mike Wright gave deposition testimony that he contracted with Harris to repair the roof for $375,000.  Because American filed its fraud claim within four years of learning that Harris had misrepresented the cost of the roof repairs and Harris did not conclusively prove that American should have discovered Harris’s misrepresentations before November 11, 1997, we hold that Harris did not meet his burden of showing that American’s fraud claim is barred by the statute of limitations.

Although the trial court granted the directed verdict against American on statute of limitations grounds, we turn to Harris’s argument that American’s fraud claim is barred by the holding in 
Ernst & Young 
because we must affirm the directed verdict, even though the trial court’s rationale was erroneous, if the directed verdict can be supported on another basis.  
Cano v. N. Tex. Nephrology Assocs., P.A.
, 99 S.W.3d 330, 339 (Tex. App.—Fort Worth 2003, no pet.).

In 
Ernst & Young
,
(footnote: 15) the supreme court set forth the following test for a fraudfeasor’s liability to third parties:  One who makes a fraudulent misrepresentation is subject to liability to the persons or class of persons whom he intends or has reason to expect to act or to refrain from action in reliance upon the misrepresentation, for pecuniary loss suffered by them through their justifiable reliance in the type of transaction in which he intends or has reason to expect their conduct to be influenced. 
 
51 S.W.3d at 578.  Even an obvious risk that a misrepresentation might be repeated to a third party is not enough to satisfy the reason-to-expect standard; rather, the alleged fraudfeasor must “have information that would lead a reasonable [person] to conclude that there is an especial likelihood that it will reach those persons and will influence their conduct.”  
Id. at 
580.  Further, mere foreseeability will not meet the reason-to-expect standard; instead, the claimant’s reliance must be “especially likely” and justifiable, and the transaction sued upon must be the type the defendant contemplated.  
Id.

Harris will not be held liable to American unless American is an entity that he intended or had reason to expect to pay the hail damage claim.  At the time he made the misrepresentations, Harris did not know about the American insurance policy.  Therefore, he did not have information that would lead a reasonable person to conclude that there was an especial likelihood that his misrepresentations would reach any insurer other than Aetna.  To the contrary, Harris had every reason to believe that Aetna was the sole insurer liable for the hail damage claim.  The building’s previous owner filed the hail damage claim with Aetna and purposely withheld information about American’s liability from Harris.  Aetna gave Harris documentation verifying that it was paying one hundred percent of the claim and Harris did, in fact, receive the hail damage claim benefits from Aetna.  Because the record contains no evidence that Harris could foresee that American’s, or any other insurer’s besides Aetna’s, reliance 

on his misrepresentation was especially likely, we overrule American’s sole issue.  Having overruled all of Harris’s and American’s issues, we affirm the trial court’s judgment.

JOHN CAYCE

CHIEF JUSTICE

PANEL A: CAYCE, C.J.; DAUPHINOT and GARDNER, JJ.

DELIVERED: February 10, 2005

FOOTNOTES
1:
The Aetna policy was pro rata, and the American policy expressly covered fifty percent of the property loss.

2:
This amount included both roof and skylight damage.

3:
The 21.55 claim was not submitted to the jury because the court conditionally granted Harris’s motion for a directed verdict on that issue.  The court indicated that it would grant the motion if the jury found Harris’s insurance claims to be valid, which it did not.

4:
The actual amount of American’s liability for the hail damage claim was reached by adding fifty percent of the ACV and fifty percent of the true replacement cost, minus the deductible and ACV, as shown below:

$268,000 (ACV) x .5 = $134,000 

$375,000 (cost of repairs) - 25,000 (deductible) 

- 268,000 (ACV) = $82,000 

$82,000 x .5 = $41,000 

$134,000+41,000= $175,000. 

5:
Because the hail damage claim was indisputably covered by the American policy, we sustain that part of Harris’s first issue.

6:
Aetna was unaware of the American policy when it agreed to cover one hundred percent of the hail damage loss.

7:
Harris submitted the following breach of contract questions:

1) Did Defendant American Protection Insurance Company breach its insurance policy in its efforts adjusting, or failing to adjust, Mr. Harris’[s] insurance claims? 

2) Was such breach of its insurance policy a producing cause of damages to Mr. Harris and, if so, find the amount of such damages.   

8:
The pertinent sections of article 21.55 require an insurer to  acknowledge receipt of a claim in writing, commence an investigation, request “items, statements and forms from the insured” 
fifteen days after the insurer receives notice of a claim,
 and pay a claim within sixty days of receiving the requested “items, statements and forms.”  
Tex. Ins. Code Ann.
 art. 21.55, §§
 2, 3(f)
 (Vernon Supp. 2004-05)
.

9:
This statutory standard is identical to the common law bad faith standard.  
Mid-Century Ins. Co. of Tex. v. Boyte
, 80 S.W.3d 546, 549 (Tex. 2002); 
Giles
, 950 S.W.2d 48, 55 (Tex. 1997).

10:
Because Harris did not prove that the supplemental claim was covered by the American policy, we overrule that part of his first issue.

11:
Section C, Paragraph 4 of the policy provided as follows:  “This policy does not insure against loss or damage caused by or resulting from: faulty workmanship, material, construction or design . . . or work being performed upon property and directly attributable thereto; except ensuing loss from a peril not otherwise excluded by this policy.”

12:
Section D, Paragraph 27 of the policy provided
 as follows: “This company shall not be liable for loss occurring while a described building . . . is vacant or unoccupied beyond a period of sixty consecutive days unless existing fire protection, watch and alarm services are maintained and written notice is given to the company prior to the sixtieth consecutive day of cessation, vacancy or unoccupancy.”

13:
The expiration date on the American policy in the record is August 5, 1996.  
The supplemental claim was made the following February.

14:
Questions 2, 5, 7, and 11 instructed the jury to consider “the following element of damages and no other”: 
“reasonable and necessary costs to repair the roof and skylights from damages arising from the May 5, 1995 hailstorm”; however, the jury’s answers to corresponding liability questions precluded it from answering those questions.  Although Question 12 asked the jury to find “the reasonable and necessary cost(s) of  repairing the roof and skylights . . . . for damage, if any, arising from the May 5, 1995 hailstorm,” it failed to connect that measure of damages with the negligence question. 

15:
In 
Ernst & Young
, 
an investor alleged that an accounting firm knowingly or recklessly materially misrepresented the financial health of a bank and intended investors to rely on the misrepresentation, and that the investor actually and justifiably relied on the misrepresentation when it bought notes from a bank with which the audited bank was about to merge.  The supreme court held that the accounting firm established as a matter of law that it had no reason to expect the investor’s reliance on the audit report in the transaction at issue.  
Ernst & Young
, 
L.L.P.
, 51 S.W.3d at 
582.