

# COURT OF APPEALS

**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

## NO. 02-16-00090-CV

PAMELA A. ALBRIGHT                                                                                          APPELLANT

V.

GOOD SAMARITAN SOCIETY -                                                                        APPELLEE
DENTON VILLAGE

----------

FROM COUNTY COURT AT LAW NO. 2 OF DENTON COUNTY
TRIAL COURT NO. CV-2015-02345

----------

## MEMORANDUM OPINION[1]

----------

Appellant Pamela A. Albright appeals from the trial court's order granting Appellee Good Samaritan Society – Denton Village's motion for traditional summary judgment. We modify the judgment and affirm as modified.

---

[1]*See* Tex. R. App. P. 47.4.

# I.  BACKGROUND

Good Samaritan sued Albright on a sworn account and, alternatively, for breach of contract and quantum meruit, alleging that Albright had agreed to pay for room, board, and other services; that it had provided those services to her; and that she had not paid for those services as agreed.  To its petition, Good Samaritan attached a copy of an admission agreement between it and Albright; a copy of a billing statement dated October 20, 2015, reflecting that Albright had an amount due of $6,471.93; and an affidavit of its records custodian, Michael Larson.

The admission agreement provided that Good Samaritan would furnish Albright with "room, board, required nursing care, dietary services, an activities program . . . room/bed maintenance and housekeeping services, basic personal laundry services, medically related social services, and other services required by law" in exchange for the payment of a daily rate.  It reflects that Good Samaritan admitted Albright as a Medicare patient under payment terms providing that Medicare would pay for the expenses she incurred through the first twenty days of her stay.  Beginning on the twenty-first day, the payment terms provided that Albright was responsible to pay a daily coinsurance rate set by Medicare in the amount of $152.00.

The billing statement reflected that Good Samaritan admitted Albright on November 14, 2014, and discharged her on January 27, 2015, and it showed two charges:  first, an undated "balance forward" amount of $6,419.76; and second,

an interest charge of $52.17 for a date of service from November 14, 2014, through January 27, 2015. Additionally, the billing statement contained the following note:

> UHC HAS ASSIGNED A PATIENT RESPONSIBILITY AMOUNT OF [$]3,192.00 FOR DEC[.] 2014, AND [$]3,071.25 FOR JAN[.] 2015[.] THESE AMOUNTS ARE NOW DUE FROM YOU PRIVATELY[.] THANK YOU.

Good Samaritan filed a motion for traditional summary judgment, attaching as summary-judgment evidence the admission agreement, billing statement, and Larson's affidavit, as well as the affidavit of its attorney, Gregory J. Sawko. *See* Tex. R. Civ. P. 166a(a), (c). Albright did not file a response. Without specifying the basis for its ruling, the trial court granted Good Samaritan's motion and awarded it $4,384.18 in damages and $4,000 in attorney's fees for attorney services rendered through trial. The trial court also awarded Good Samaritan conditional attorney's fees of $6,000 in the event it became necessary for Good Samaritan to defend any post-trial motions or appear at any related hearings, of $6,000 in the event Albright appealed to this court, and of $6,000 in the event she appealed to the supreme court. In three issues, Albright appeals.

## II. SUMMARY-JUDGMENT BURDEN

To prevail on its motion for traditional summary judgment, Good Samaritan had the burden to prove that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex.

3

2009). Albright filed no response to Good Samaritan's motion, but she was not required to because a nonmovant has no burden to respond to a motion for traditional summary judgment unless the movant conclusively establishes its cause of action or defense. *See Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 222–23 (Tex. 1999). Thus, a trial court may not grant traditional summary judgment by default simply because the nonmovant did not file a response. *Id.* at 223; *Rockwell v. Wells Fargo Bank, N.A.*, No. 02-12-00100-CV, 2012 WL 4936619, at *4 (Tex. App.—Fort Worth Oct. 18, 2012, no pet.) (mem. op.). Even when the nonmovant fails to file a response, the movant still carries the burden to establish its right to summary judgment with legally sufficient evidence. *See Rhone-Poulenc, Inc.*, 997 S.W.2d at 223; *Rockwell*, 2012 WL 4936619, at *3.

## III. STANDARD OF REVIEW

We review a summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). We take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort*, 289 S.W.3d at 848. We must consider whether reasonable and fair-minded jurors could differ in their conclusions in light of all of

4

the evidence presented.  *See Wal-Mart Stores, Inc. v. Spates*, 186 S.W.3d 566, 568 (Tex. 2006); *City of Keller v. Wilson*, 168 S.W.3d 802, 822–24 (Tex. 2005).

Because the trial court did not specify the grounds for its summary judgment here, we must affirm the summary judgment if any of the grounds Good Samaritan presented in its summary-judgment motion are meritorious.  *See Provident Life*, 128 S.W.3d at 216.

## IV.  GOOD SAMARITAN'S BREACH-OF-CONTRACT CLAIM

In her first issue, Albright contends that Good Samaritan was not entitled to summary judgment on its breach-of-contract claim because it failed to establish the element of damages with competent summary-judgment evidence.[2]  For the first time, Albright raises four objections to Good Samaritan's summary-judgment evidence.  She argues that (1) the Larson affidavit is conclusory; (2) the Larson affidavit fails to show that it was made on personal knowledge; (3) the Larson affidavit did not properly authenticate the billing statement as a business record under rules 803(6) and 902(10) of the Texas Rules of Evidence; and (4) there is

---

[2]To prevail on a breach-of-contract claim, a plaintiff must prove (1) the existence of a valid contract, (2) performance or tendered performance by the plaintiff, (3) breach of the contract by the defendant, and (4) damages to the plaintiff resulting from that breach.  *See, e.g.*, *Harris v. Am. Protection Ins. Co.*, 158 S.W.3d 614, 622–23 (Tex. App.—Fort Worth 2005, no pet.).  Because Albright challenges only the sufficiency of Good Samaritan's summary-judgment evidence to establish the fourth element, we confine our discussion to that issue.  *See Embiabata v. Nat'l Capital Mgmt., LLC*, No. 03-10-00373-CV, 2011 WL 4924124, at *3 (Tex. App.—Austin Oct. 13, 2011, no pet.) (mem. op.) ("Because [appellants] challenge only whether [appellee] met its summary-judgment burden regarding one aspect of the fifth element [of its claim for deficiency on a secured transaction], we will limit our discussion accordingly.").

5

a conflict in Good Samaritan's summary-judgment proof. Because of these defects, Albright contends that the Larson affidavit and the billing statement are insufficient to establish the damages element of Good Samaritan's breach-of-contract claim.

Albright did not object to any of the summary-judgment evidence in the trial court, and she therefore waived any defects in the form of Good Samaritan's affidavits or attachments. *See* Tex. R. Civ. P. 166a(f) (providing that "[d]efects in the form of affidavits or attachments will not be grounds for reversal unless specifically pointed out by objection by an opposing party with opportunity, but refusal, to amend"); *Law Office of David E. Williams, II, P.C. v. Fort Worth Tex. Magazine Venture, LP*, No. 02-10-00373-CV, 2011 WL 2651865, at \*2 (Tex. App.—Fort Worth July 7, 2011, no pet.) (mem. op.). Albright's objections that the Larson affidavit fails to show that it was made on personal knowledge, that the billing statement was not a properly authenticated business record, and that the Larson affidavit contains contradictory statements are all defects in form, and thus her failure to raise these objections in the trial court waived them on appeal. *See Law Office of David E. Williams, II, P.C.*, 2011 WL 2651865, at \*2 (lack of personal knowledge and failure to authenticate business record objections assert defects in form); *Rockwall Commons Assocs., Ltd. v. MRC Mortg. Grantor Trust I,* 331 S.W.3d 500, 507 (Tex. App.—El Paso 2010, no. pet.) (objection that statement of an interested witness is not clear, positive, direct, or free from contradiction asserts defect in form); *Dulong v. Citibank (S.D.), N.A.*, 261 S.W.3d

6

890, 893 (Tex. App.—Dallas 2008, no pet.) (lack of personal knowledge and failure to authenticate business record objections assert defects in form); *see also Alaniz v. Rebello Food & Beverage, L.L.C.*, 165 S.W.3d 7, 19 n.19 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (affidavits of interested witnesses present defect in form requiring preservation). However, because the objection that an affidavit is conclusory asserts a defect of substance and not form, Albright may raise her argument that the Larson affidavit is conclusory in this appeal. *See Thompson v. Curtis*, 127 S.W.3d 446, 450 (Tex. App.—Dallas 2004, no pet.) ("An objection that an affidavit is conclusory is an objection to the substance of the affidavit and may be raised for the first time on appeal."); *see also Law Office of David E. Williams, II, P.C.*, 2011 WL 2651865, at *2 (addressing objection that affidavit was conclusory even though appellant failed to secure a ruling to his objection on that basis in the trial court).

Conclusory statements in an affidavit, whether legal or factual, are not credible or susceptible to being readily controverted, and thus conclusory statements will not support a summary judgment. *Brown v. Mesa Distribs, Inc.*, 414 S.W.3d 279, 287 (Tex. App.—Houston [1st Dist.] 2013, no pet.); *see Ryland Group, Inc. v. Hood*, 924 S.W.2d 120, 122 (Tex. 1996); Tex. R. Civ. P. 166a(c) (providing that summary judgment may be based on uncontroverted testimonial evidence of an interested witness "if the evidence is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted"). A conclusory statement is one that does not

7

provide the underlying facts to support the conclusion. *Residential Dynamics, LLC v. Loveless*, 186 S.W.3d 192, 198 (Tex. App.—Fort Worth 2006, no pet.). Albright contends the assertion in the Larson affidavit that she owed Good Samaritan the amount of $6,471.93 is conclusory because (1) the affidavit fails to demonstrate that all applicable adjustments, offsets, and credits were applied in reaching that amount and (2) Larson failed to attach sworn or certified copies of papers he referenced in his affidavit.

We turn first to Albright's argument that the Larson affidavit is conclusory because it fails to set forth facts demonstrating that all applicable offsets, credits, and payments had been applied. In his affidavit, Larson stated that he was Good Samaritan's administrator and had "care, custody[,] and control of all records concerning" Albright's account. He referenced the billing statement that he had attached to his original petition; stated that it was within his personal knowledge; and that it was just, true, and due by Albright.[3] The billing statement showed that Albright owed a balance of $6,471.93 connected with her stay at Good Samaritan's facility during the period of November 14, 2014 (the day she was admitted), through January 27, 2015 (the day she was discharged). In reference to that balance, Larson stated that "all just and lawful offsets, payments[,] and credits to this account have been allowed." This language is not conclusory and is sufficient to support summary judgment. *See, e.g.*, *Emiabata*, 2011 WL

---

[3]Good Samaritan also included a copy of that billing statement as part of the summary-judgment evidence it attached to its summary-judgment motion.

8

4924124, at *3–4 (holding affidavit statement that a certain balance remained on a note "[a]fter all offsets, credits and payment[s] have been applied" was sufficient to support summary judgment); *Morales v. JP Morgan Chase Bank, N.A.*, No. 01-10-00553-CV, 2011 WL 2624047, at *5–6 (Tex. App.—Houston [1st Dist.] June 30, 2011, no pet.) (mem. op.) (holding affidavit statement that "all just and lawful offsets, payments and credits have been allowed" was not conclusory and was sufficient to support summary judgment).

Next, Albright argues that the Larson affidavit is substantively defective because Larson failed to attach or serve certified or sworn copies of papers referenced in the billing statement. The billing statement contains the following notation:

> UHC HAS ASSIGNED A PATIENT RESPONSIBILITY AMOUNT OF [$]3,192.00 FOR DEC[.] 2014, AND [$]3,071.25 FOR JAN[.] 2015[.] THESE AMOUNTS ARE NOW DUE FROM YOU PRIVATELY[.] THANK YOU.

Albright appears to argue that the reference "UHC has assigned a patient responsibility amount" is a reference to papers of which Good Samaritan was required to provide sworn or certified copies. Assuming without deciding that the above-quoted language in the billing statement is a reference to other papers, Albright's argument nevertheless fails. While it is true that rule 166a(f) of the Texas Rules of Civil Procedure provides that "[s]worn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith," the billing statement is not an affidavit. And Albright has

9

provided no authority for her contention that the failure to provide sworn or certified copies of papers referred to in a document that is not an affidavit renders the document substantively defective such that it cannot constitute competent summary-judgment evidence.[4] We thus find Albright's argument concerning Good Samaritan's failure to attach or serve sworn or certified copies of papers purportedly referenced in the billing statement unavailing.

We conclude that the Larson affidavit and the billing statement are not substantively defective and constitute competent summary-judgment evidence that is legally sufficient to establish the damages element of Good Samaritan's breach-of-contract claim. And because Albright failed to provide any controverting evidence raising a fact issue on that element—the only element she challenges in this appeal—we conclude that Good Samaritan was entitled to summary judgment on its breach-of-contract claim. *See* Tex. R. Civ. P. 166a(c); *Fielding*, 289 S.W.3d at 848 ("The party moving for traditional summary judgment

---

[4]Although Albright cites as support for her argument our decision in *Luke v. Unifund CCR Partners*, No. 02-06-00444-CV, 2007 WL 2460327, at *6 (Tex. App—Fort Worth Aug. 31, 2007, no pet.) (mem. op.), her reliance on that case is misplaced. In *Luke*, the issue was whether an affidavit was substantively defective because the affiant failed to attach or serve a certified or sworn copy of a written contract that she had expressly referenced in her affidavit. 2007 WL 2460327, at *6. We concluded it was in part because of rule 166a(f)'s requirement that "[s]worn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith." *Id.* (citing Tex. R. Civ. P. 166a(f)). Unlike *Luke*, Albright's argument centers not on any alleged reference to papers made in an affidavit but rather on an alleged reference to papers in the billing statement itself. *Luke* is therefore inapposite. *See* Tex. R. Civ. P. 166a(f) (requiring that sworn or certified copies of all papers referenced *in an affidavit* be attached to or served with the affidavit).

bears the burden of showing no genuine issue of material fact exists and it is entitled to judgment as a matter of law."). We therefore overrule Albright's first issue.[5]

## V. ATTORNEY'S FEES

In her second issue, Albright challenges the sufficiency of the evidence to support the trial court's award of attorney's fees to Good Samaritan. In its final summary judgment, the trial court awarded Good Samaritan $4,000 in attorney's fees for services rendered through the date of trial, $6,000 if it became necessary for Good Samaritan to defend any postjudgment motions and to appear at any related hearing, $6,000 if Albright appealed to this court, and $6,000 if she appealed to the supreme court. The record reflects that the only evidence Good Samaritan submitted related to its attorney's fees was two affidavits of its attorney, Sawko. Albright offers four arguments why the evidence is insufficient to support the trial court's award of attorney's fees to Good Samaritan: (1) one of

---

[5]Having concluded that Good Samaritan was entitled to summary judgment on its breach-of-contract claim and overruled Albright's first issue, we need not address her third issue, which asserts that Good Samaritan failed to establish that it was entitled to summary judgment on its sworn-account claim. *See* Tex. R. App. P. 47.1; *Provident Life*, 128 S.W.3d at 216 (when the trial court does not specify the basis for its summary judgment, "we must affirm the summary judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious"); *see also Delcor USA, Inc. v. Tex. Indus. Specialists, Inc.*, No. 14-11-00048-CV, 2011 WL 6224466, at *4 n.1 (Tex. App.—Houston [14th Dist.] Dec. 13, 2011, no pet.) (mem. op.) ("Because [appellee's] motion and evidence were sufficient under a breach of contract theory, we need not address [appellee's] responsive argument that the judgment could be affirmed under a sworn account theory.").

11

Sawko's affidavits was untimely filed, (2) Good Samaritan did not prove that it presented its claim pursuant to section 38.002 of the civil practices and remedies code, (3) Good Samaritan made an excessive demand, and (4) Sawko's timely-filed affidavit is conclusory and insufficient to support the trial court's award of attorney's fees. We address each of these arguments in turn.

## A. SAWKO'S FEBRUARY 17, 2016 AFFIDAVIT WAS UNTIMELY FILED

Albright first argues that one of Sawko's affidavits was untimely filed without leave of the trial court, and thus it was not properly before the trial court when it considered Good Samaritan's summary-judgment motion and is not part of the summary-judgment record on appeal. When Good Samaritan filed its motion for traditional summary judgment on December 18, 2015, it attached an affidavit from Sawko, which he executed the same day, regarding attorney's fees. The record shows that on February 12, 2016, the trial court heard Good Samaritan's motion by submission and granted it. The trial court signed its final summary judgment on February 17, 2016, and on that same day, Good Samaritan filed another affidavit executed by Sawko regarding Good Samaritan's attorney's fees.

Except on leave of court, affidavits in support of a motion for summary judgment must be filed and served at least twenty-one days before the time specified for hearing. Tex. R. Civ. P. 166a(c). Summary judgment evidence may be filed late only with leave of court. *See Benchmark Bank v. Crowder*, 919 S.W.2d 657, 663 (Tex. 1996) (citing Tex. R. Civ. P. 166a(c)). Where nothing

12

in the record indicates that late-filed summary-judgment evidence was filed with leave of court, we presume that the trial court did not consider it. *See, e.g.*, *Pipkin v. Kroger Tex., L.P.*, 383 S.W.3d 655, 662–63 (Tex. App.—Houston [14th Dist.] 2012, pet. denied). Because nothing in the record indicates that the trial court granted Good Samaritan leave to file Sawko's February 17, 2016 affidavit, we presume that the trial court did not consider it. Thus, the only summary-judgment evidence that could support the trial court's award of attorney's fees to Good Samaritan is Sawko's December 18, 2015 affidavit.

## B. ALBRIGHT FAILED TO PRESERVE HER PRESENTMENT COMPLAINT

Albright argues that Good Samaritan was not entitled to recover attorney's fees because it did not present any summary-judgment evidence showing that it had presented its claim to Albright and that she had not tendered payment within thirty days after such presentment. *See* Tex. Civ. Prac. & Rem. Code Ann. § 38.002 (West 2015). However, Albright did not raise this objection in the trial court. We therefore conclude that she failed to preserve it for our review. *See* Tex. R. App. P. 33.1(a); *see, e.g.*, *Jimoh v. Nwogo*, No. 01-13-00675-CV, 2014 WL 7335158, at *4 (Tex. App.—Houston [1st Dist.] Dec. 23, 2014, no pet.) (mem. op.) (holding complaint that plaintiff failed to present claim in accordance with section 38.002 of the civil practices and remedies code must be preserved).

## C. ALBRIGHT FAILED TO PRESERVE HER EXCESSIVE-DEMAND COMPLAINT

Albright also argues alternatively that Good Samaritan is not entitled to recover attorney's fees because it made an excessive demand on her. In order to preserve an excessive-demand complaint, the debtor is required to plead excessive demand as an affirmative defense to the claim for attorney's fees and request findings of fact regarding the essential elements of excessive demand. *See Dror v. Mushin*, No. 14-12-00322-CV, 2013 WL 5643407, at *8 (Tex. App.—Houston [14th Dist.] Sept. 26, 2013, pet. denied) (mem. op.). Albright failed to do both of these things, and thus she also failed to preserve her excessive-demand complaint for our review.

## D. SUFFICIENCY OF SAWKO'S DECEMBER 18, 2015 AFFIDAVIT

Albright contends that Sawko's December 18, 2015 affidavit is conclusory and therefore insufficient to support the trial court's award of attorney's fees to Good Samaritan. As we noted above, the complaint that an affidavit is conclusory asserts a defect in substance and not form and thus may be raised for the first time on appeal. *See Thompson*, 127 S.W.3d at 450; *see also Law Office of David E. Williams, II, P.C.*, 2011 WL 2651865, at *2. And again, a conclusory statement is one that does not provide the underlying facts to support the conclusion. *Residential Dynamics, LLC*, 186 S.W.3d at 198.

In his December 18, 2015 affidavit, Sawko averred that he had practiced law almost exclusively in Denton County for nearly twenty-one years, during which time he had represented banks and other businesses in Denton County

14

courts and had become familiar with the reasonable rate for the services he performed. He stated that a reasonable hourly rate in Denton County for an attorney with his experience was $300 per hour. Sawko testified that this matter involved the collection of money under the terms of a contract, a type of case that required him to perform such services as initially reviewing Good Samaritan's documents, contacting Albright by letter, "speaking with a representative of Advocacy Services on [Albright's] behalf," preparing this lawsuit, reviewing Albright's answer, preparing Good Samaritan's summary-judgment motion, and preparing the affidavits accompanying that motion. He averred that as of the date the motion for traditional summary judgment was filed (December 18, 2015), Good Samaritan had incurred $3,400 in reasonable and necessary attorney's fees in the course of pursuing its claims against Albright. He further stated that he anticipated Good Samaritan would incur an additional $1,000 in attorney's fees for him to review any response Albright filed to the summary-judgment motion, to attend a hearing on the motion, and to prepare an order following that hearing. He stated that $6,000 would be the usual and customary fees charged in Denton County to defend Good Samaritan in an appeal to this court and that an additional $6,000 would be the usual and customary fees charged in Denton County to defend Good Samaritan in an appeal to the supreme court.

Albright argues that this affidavit testimony is conclusory because Sawko did not state or itemize the amount of time he spent prosecuting Good Samaritan's claims or the amount of time that would be required for post-trial and

15

appellate matters and because Sawko's affidavit does not establish that his fee calculation was based on a consideration of the *Arthur-Andersen* factors. *See Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997). However, the failure to state the total amount of hours that were spent on the entire case, or the amount of hours that were spent on each specific task, in an uncontradicted attorney's fee affidavit does not necessarily render that affidavit conclusory. *See Delcor USA, Inc.*, 2011 WL 6224466, at \*4–5 (holding that attorney's failure to delineate how much time she spent on each task, how many hours she spent on the entire case, or the hourly rate the she believed was reasonable did not render her uncontradicted attorney's fee affidavit conclusory). Nor does an attorney's failure to identify the factors he used to determine the reasonableness of his fees necessarily render his uncontroverted fee affidavit conclusory. *See id.*, at \*5 (holding that attorney's failure to identify the factors relevant for determining the reasonableness of her fee did not render her uncontradicted attorney's fee affidavit conclusory). We conclude that Sawko's December 18, 2015 affidavit testimony adequately provides the underlying facts to support his conclusion as to his opinion regarding the amount and reasonableness of Good Samaritan's incurred attorney's fees. *See Residential Dynamics, LLC*, 186 S.W.3d at 198; *see also Delcor USA, Inc.*, 2011 WL 6224466, at \*4–5.

Albright's final argument attacks the trial court's award of $4,000 in attorney's fees for services rendered through trial and of $6,000 in attorney's fees

16

for postjudgment motions and hearings, arguing that the evidence is insufficient to support these specific attorney-fee awards.

With respect to the trial court's award of $4,000 in fees for services through trial, the only evidence before the trial court was Sawko's testimony in his December 18, 2015 affidavit that Good Samaritan had incurred $3,400 in reasonable and necessary attorney's fees as of that date and that he "anticipated" Good Samaritan would incur an additional $1,000 in attorney's fees for his services in reviewing any response Albright filed to the summary-judgment motion, attending a hearing on the motion, and preparing an order following that hearing.[6]  As we understand her argument, Albright contends that the evidence is insufficient to support the trial court's award of $4,000 in attorney's fees through trial.  We conclude that Sawko's December 18, 2015 affidavit is sufficient only to establish that Good Samaritan incurred $3,400 in reasonable and necessary attorney's fees through trial.  The trial court's award of $600 in additional fees is not supported by Sawko's testimony that he "anticipated" Good Samaritan would incur another $1,000 in attorney's fees for him to review Albright's summary-judgment response, appear for a summary-judgment hearing, and prepare an order.  That testimony is nothing more than speculation that Good Samaritan

_____

[6]In his February 17, 2016 affidavit, Sawko testified that in prosecuting its claims against Albright, Good Samaritan had incurred attorney's fees in the amount of $4,000 "to the date of filing its Final Summary Judgment."  However, we concluded above that Sawko's February 17, 2016 affidavit was untimely filed without leave of the trial court and therefore is not part of the summary-judgment record.

17

may incur an additional $1,000 in reasonable and necessary attorney's fees for services that Sawko may be required to perform in the future. We cannot say that such evidence establishes that Sawko did, in fact, perform those services or that Good Samaritan did, in fact, incur those fees.[7] Consequently, we cannot conclude that Sawko's December 18, 2015 affidavit established, as a matter of law, that Good Samaritan was entitled to more than $3,400 in reasonable and necessary attorney's fees through trial. *See* Tex. R. Civ. P. 166a(c); *Mann Frankfort*, 289 S.W.3d at 848. Thus, we hold that on this record, Sawko's December 18, 2015 affidavit was legally sufficient to establish only that Good Samaritan incurred reasonable and necessary attorney's fees of $3,400 through trial.

The trial court also awarded Good Samaritan reasonable and necessary attorney's fees in the amount of $6,000.00 in the event it became necessary to defend any post-summary judgment motions or appear at any hearings related thereto. Sawko's December 18, 2015 affidavit provides no evidence related to the amount of reasonable and necessary attorney's fees that Good Samaritan would incur in the event Sawko was required to defend a post-summary judgment motion or appear at any related hearings. We therefore agree with

---

[7]Indeed, the record reflects that Albright did not file a response to Good Samaritan's summary-judgment motion, and thus there was no response for Sawko to review. The record also reflects that Sawko did not appear for a hearing on Good Samaritan's summary-judgment motion.

18

Albright that there is no evidence to support the trial court's award of $6,000 in conditional postjudgment attorney's fees.

Accordingly, we sustain the portion of Albright's second issue as to the trial court's award of $4,000 in attorney's fees through trial and $6,000 in attorney's fees for post-summary judgment motions and related hearings. We overrule the remainder of Albright's second issue.

## VI. CONCLUSION

We have overruled Albright's first issue and, for that reason, have concluded that we need not reach her third issue. Having sustained a portion of her second issue, however, we modify the trial court's final summary judgment by (1) deleting the phrase "FOUR THOUSAND AND NO/100 ($4,000.00) DOLLARS" in paragraph "e" and substituting in its place the phrase "THREE THOUSAND FOUR HUNDRED AND NO/100 ($3,400.00) DOLLARS"; and (2) deleting the entirety of paragraph "f." *See* Tex. R. App. P. 43.2(b). As so modified, we affirm the trial court's judgment. *See id.*

/s/ Lee Gabriel

LEE GABRIEL
JUSTICE

PANEL:  MEIER, GABRIEL, and SUDDERTH, JJ.

DELIVERED:  April 20, 2017