The HEIL COMPANY, Appellant,

v.

POLAR CORPORATION, as Surviving Entity of Merger between Pentron, Inc. and Polar; and Richard L. Frank, Appellees.

No. 2–05–101–CV.

Court of Appeals of Texas, Fort Worth.

April 6, 2006.

Cowles & Thompson, P.C., R. Michael Northrup and Sim Israeloff, Dallas, for appellant.

Weil, Gotshal & Manges, L.L.P., T. Ray Guy and Paige Holden Montgomery, Dallas, for appellees.

PANEL B: LIVINGSTON, GARDNER, and WALKER, JJ.

## OPINION

TERRIE LIVINGSTON, Justice.

### I. INTRODUCTION

Appellant The Heil Company ("Heil") challenges the trial court's order denying its motion for summary judgment and granting summary judgment in favor of appellees Polar Corporation, as the surviving entity of a merger between Pentron, Inc. ("Pentron") and Polar ("Polar"), and Richard L. Frank ("Frank"). In three issues, Heil complains that the trial court erred by denying its motion for summary judgment, by granting Polar's motion for summary judgment, and by overruling its objections to part of Polar's summary judgment evidence. We affirm the trial court's judgment as to Polar but reverse and remand the trial court's judgment as to Frank.

### II. FACTUAL AND PROCEDURAL BACKGROUND

Pursuant to a stock purchase agreement ("the Agreement") dated October 3, 1995, Pentron and Frank sold all of the issued and outstanding shares of stock of the Trailmaster Corporation ("Trailmaster") to Heil. Trailmaster was dissolved and became part of Heil. Polar purchased Pentron in October 1995 and merged with Pentron in April 2000. Polar was the surviving entity after its merger with Pentron.

The Agreement between Pentron, Frank, and Heil contained a number of representations, warranties, and covenants. Among those were Pentron's and Frank's representations and warranties in Section 2.1.12 that "Trailmaster has good and marketable title to ... those properties and assets listed and described in Schedule 2.1.12." The Schedule listed and described three bridge cranes. The Agreement also contained an indemnity provision providing that Pentron and Frank would "indemnify, defend and hold [Heil] harmless from and against any and all loss, cost, damage or expense whatsoever ... resulting from or arising out of any breach by either of any representation, warranty ... or covenant." The indemnity provision included a notification procedure whereby Pentron and Frank would have ten days from the receipt of a "Claim Notice" to notify Heil if they disputed their liability regarding an indemnity claim. Failure to dispute liability within this time arguably established an obligation to "defend [the claim] by appropriate proceedings."

Sometime in 2003, Heil removed the cranes listed in Schedule 2.1.12 of the Agreement from a property that Trailmaster had previously leased from TE & J, Inc. ("TE & J"). Thereafter, in June 2003, TE & J sued Heil, claiming that the cranes were part of the leased property and that Heil removed the cranes without TE & J's approval or consent and without legal authority. On August 8 and August 22, 2003, Heil mailed written claim notices to Pentron and Frank demanding that they, in accordance with the terms of the Agreement, indemnify, defend, and hold Heil harmless from TE & J's lawsuit and claims. Polar denied Heil's demand for indemnification.

After Polar refused to indemnify Heil, Heil brought a third-party claim against Pentron and Frank.[1] Heil asserted claims

---

1. Heil later amended its third-party petition to assert its claims against Polar, as the sur-

for breach of warranty, breach of contract, fraud, negligent misrepresentation, declaratory relief, and attorneys' fees and costs. Heil eventually settled with TE & J, but Heil's claims against Polar and Frank remained pending.

Heil filed a traditional motion for summary judgment on its breach of warranty and breach of contract claims, and Polar filed a cross-motion for summary judgment on all of Heil's claims. Heil objected to portions of Polar's summary judgment evidence, but the trial court overruled Heil's objections. The trial court ultimately denied Heil's motion for summary judgment and granted Polar's motion for summary judgment on all of Heil's claims and causes of action, dismissing them with prejudice. As to Frank, the order provides that he joined in Polar's motion for summary judgment. This appeal followed.

### III. STANDARD OF REVIEW

In a summary judgment case, the issue on appeal is whether the movant met the summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex.2002); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979). The burden of proof is on the movant, and all doubts about the existence of a genuine issue of material fact are resolved against the movant. *Sw. Elec. Power Co.*, 73 S.W.3d at 215. Therefore, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and re-

solve any doubts in the nonmovant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex.2005). Evidence that favors the movant's position will not be considered unless it is uncontroverted. *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex.1965).

When both parties move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both parties' summary judgment evidence and determine all questions presented. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex.2000). The reviewing court should render the judgment that the trial court should have rendered. *Id.*

### IV. Breach of Warranty

In its first issue, Heil argues that the trial court erred by granting Polar's motion for summary judgment on Heil's breach of warranty claim.[2] In its second issue, Heil argues that the trial court erred by denying its motion for summary judgment on its breach of warranty claim because Polar breached the warranties under Sections 2.1.3 and 2.1.6 of the Agreement. Because Heil's second issue challenging the trial court's judgment regarding its breach of warranty and contract claims coincides with its first issue contesting Polar's entitlement to summary judgment on the same claims, we will address them together.

We apply well-established rules of contract interpretation and construction to resolve this issue. The interpretation of

viving entity of the merger between Pentron and Polar, and Frank.

2. Heil argues in its first issue that the trial court erred by granting Polar's motion for summary judgment on its breach of warranty, breach of contract, fraud, negligent misrepre-

sentation, and declaratory relief claims. With the exception of Heil's fraud and negligent misrepresentation claims, our opinion addresses Polar's entitlement to summary judgment on each claim separately.

an unambiguous contract is a question of law, which we review de novo. *MCI Telecommunications Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 650–51(Tex.1999). Our primary concern when construing a written contract is to ascertain the true intentions of the parties as expressed in the instrument. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.1983); *Calpine Producer Servs., L.P. v. Wiser Oil Co.*, 169 S.W.3d 783, 787 (Tex.App.-Dallas 2005, no pet.). This is achieved by examining and considering the entire writing in an effort to harmonize and give effect to all provisions of the contract so that none will be rendered meaningless. *Coker*, 650 S.W.2d at 393.

■■■ A contract that can be given a definite or certain legal meaning is unambiguous as a matter of law. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex.2003). Words used in an unambiguous contract are given their plain and ordinary meanings unless the instrument shows that the parties used the words in a technical or different sense. *Consol. Petroleum Partners, I, LLC v. Tindle*, 168 S.W.3d 894, 898 (Tex.App.-Tyler 2005, no pet.) (op. on reh'g). A contract is ambiguous when its meaning is uncertain or is reasonably susceptible to more than one meaning. *Coker*, 650 S.W.2d at 393.

## A. The Agreement

The Agreement is a stock purchase agreement memorializing Pentron's and Frank's desire to sell and Heil's desire to purchase the shares of Trailmaster. It is not an agreement solely intended to sell and purchase assets, including cranes. Section 2.1 sets forth twenty-three warranties made by Pentron and Frank, beginning with provisions relating to Trailmaster's status as a duly organized corporation under Texas law and the sale and transfer of the stock and ending with "Environmen-

tal Matters" (2.1.22) and "General" issues (2.1.23).

## B. Section 2.1.3

■ Heil argues that Polar and Frank breached subsection (iv) of Section 2.1.3 because "the transaction involving the sale of TE & J's cranes violated Texas common law and statutory law (e.g., theft and conversion)." Polar responds that Section 2.1.3 is inapplicable under the facts of this case because it does not concern asset ownership, but the sale of stock. Heil replies that Section 2.1.3 is not limited to the sale of shares because it provides that it is applicable to multiple "transactions contemplated hereby." Alternatively, Heil argues that Section 2.1.3 is ambiguous, thus creating a fact issue regarding the parties' intent. We agree with Polar.

Section 2.1.3 is set forth along with the other initial warranties and representations in Section 2.1. It provides in part:

> 2.1.3 *No Restriction Against Sale of Shares.* Subject to obtaining the Required Consents (as that term is defined in Section 2.1.6 hereof), *neither the execution and delivery of the Sellers' Agreements by Sellers nor the performance by Sellers of the transactions contemplated hereby or thereby will* (i) violate or conflict with any of the terms of the Trailmaster Charter Documents, (ii) violate or constitute an occurrence of default under any provision of, or conflict with, or result in acceleration of any obligation under, or give rise to a right by any party to terminate its obligations under, any contract, sales commitment, license, permit, purchase order, security agreement, mortgage, conveyance to secure debt, note, deed, loan, lease, agreement, instrument, order, judgment, decree, or other arrangement to which Trailmaster or either Seller is a party or is otherwise bound or by which any of Trailmaster's properties or assets or the

Shares are affected, (iii) result in the creation or imposition of any Lien in favor of any person or entity upon any of the properties or assets of Trailmaster or the Shares, *(iv) result in the violation or breach of or conflict with any law (including, without limitation, common law)*, statute, rule or regulation (collectively, "Laws") or (v) constitute an event which, after notice or lapse of time or both, would result in any such violation, conflict, default, acceleration, or creation or imposition of any Lien. [Emphasis added.]

Section 2.1.3 contains Pentron's and Frank's warranty that the sale of the Trailmaster stock to Heil would not result in any of the occurrences provided for in parts (i), (ii), (iii), (iv), or (v). It addresses only the "Restrictions" on Pentron's and Frank's ability *to sell the stock.* As Polar argues, Pentron's and Frank's status as owners or lessors of the cranes has no bearing on their warranty under Section 2.1.3(iv) that the sale of the Trailmaster stock would not violate any law, statute, rule, or regulation. Accordingly, we hold that Section 2.1.3 is inapplicable here, is not reasonably susceptible to more than one meaning, and is unambiguous. *See Coker*, 650 S.W.2d at 393.

### C. Section 2.1.6

Heil also argues that it was entitled to summary judgment on its breach of warranty claim under Section 2.1.6 of the Agreement. Heil argues that Polar and Frank breached Section 2.1.6 because TE & J's authorization or consent was needed to effectuate the sale of the bridge cranes, which were actually owned by TE & J. Alternatively, Heil argues that Section 2.1.6 is ambiguous, thus creating a fact issue regarding the parties' intent. Polar responds that Section 2.1.6 does not relate to asset ownership.

Section 2.1.6 provides as follows:

2.1.6 *Consents.* Except as listed or described on Schedule 2.1.6 (the "Required Consents"), *no consent, approval, order or authorization of,* or registration, declaration or filing with, any federal, state, county, municipal or local court, governmental department, commission, board, bureau, agency or instrumentality, domestic or foreign ("Government Agency"), or *any other person or entity is required to be obtained, satisfied or made by or with respect to Trailmaster, any assets, properties or operations of Trailmaster or either Seller,* in connection with the execution, delivery or performance of the Seller's Agreements by Sellers. Without limiting the generality of any other provision of this Agreement, each Seller will use its or his best efforts at its or his sole expense to obtain all Required Consents and shall indemnify, defend and hold Trailmaster and Purchaser harmless from and against any and all Losses (as defined in Section 7.1 hereof) incurred in connection therewith or arising therefrom. [Emphasis added.]

Section 2.1.6 is inapplicable because it does not, as Heil contends, constitute a warranty by Pentron and Frank that they did not need or that they had already received TE & J's consent or authorization to sell the cranes to Heil. Rather, it is a warranty relating to consents required to sell and transfer the stock of Trailmaster to Heil. According to TE & J's petition, TE & J entered into a ten-year lease agreement with Trailmaster beginning on January 1, 1994. Heil removed the cranes sometime in 2003, and TE & J sued Heil in June 2003. Thus, based on the record before us, the lease agreement remained in effect after Heil purchased Trailmaster's stock, and TE & J did not assert a cause of action against Heil until Heil removed the cranes from the leased property eight

years later. There is no evidence that the lease agreement required that TE & J consent to any transfer of Trailmaster stock. Consequently, Heil has not shown that TE & J's consent or authorization was required for Pentron and Frank to sell Trailmaster's stock to Heil. Accordingly, we hold that Section 2.1.6 is not reasonably susceptible to more than one meaning and is therefore unambiguous. *See Coker*, 650 S.W.2d at 393.[3]

### D. Section 2.1.12

Heil further argues that it alleged in its third-party petition that Polar and Frank breached Section 2.1.12's warranty of title in addition to Sections 2.1.3 and 2.1.6. As such, Heil argues that the trial court erred by granting summary judgment in favor of Polar on all of its claims and causes of action because Polar's motion for summary judgment addressed only Sections 2.1.3 and 2.1.6, not 2.1.12. Polar responds that it indeed addressed Section 2.1.12 in its motion for summary judgment and that the trial court properly granted its motion for summary judgment because Section 2.1.12, which is the applicable section under the facts of this case, has a fifteen-month stat-ute of limitations period that has already run.[4]

Polar stated the following in its summary judgment motion:

> Although Polar contests the factual contention that Pentron made any misrepresentations in the Agreement, if any warranty made by Pentron were "breached," Section 2.1.12 would clearly be the applicable section, as it is an express warranty of ownership of the property listed on Schedule 2.1.12, including the cranes at issue here.... However, the Agreement, subject to certain exceptions (which does not include the representation in § 2.1.12), provides that "all representations and warranties of [Pentron and Frank] shall survive the Closing for a period of 15 months."... As the Closing occurred on October 3, 1995, that 15–month period expired in January 1997, more than seven (7) years ago.

We hold that Polar asserted Section 2.1.12 as a ground for summary judgment on Heil's breach of warranty claim.[5]

Section 2.1.12 provides in part:

---

3. Heil also argues that the Agreement "contemplates that more than one warranty might apply to a particular situation since the agreement expressly provides that the warranties contained in it are 'cumulative.'" Heil is referring to Section 2.1.23(b) of the Agreement, which provides that the "warranties and covenants of Sellers contained in ... this Agreement are cumulative, and the fact that any particular occurrence or state of facts may not be covered by any particular representation, warranty or covenant shall not affect its coverage under any other representation, warranty or covenant." But we have determined above that Heil was not entitled to summary judgment on its breach of warranty claim under Section 2.1.3 or Section 2.1.6 of the Agreement—the warranties that Heil relied upon in its motion for summary judgment. Heil's argument under Section 2.1.23 is therefore unpersuasive.

4. Polar also contends that Heil argues for the first time on appeal that Heil pleaded a claim under Section 2.1.12 of the Agreement because Heil argued that Polar breached the warranty in *schedule* 2.1.12. After reviewing Heil's third-party petition, we hold that Heil pleaded a claim for breach of warranty under Section 2.1.12. *See Wortham v. Dow Chem. Co.*, 179 S.W.3d 189, 199 (Tex.App.-Houston [14th Dist.] 2005, no pet.) (reasoning that petitions are construed liberally in favor of the pleader).

5. *See Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 204 (Tex.2002) (reasoning that summary judgment cannot be granted except on the grounds expressly presented in the motion).

2.1.12 *Title to and Condition of Property.* Schedule 2.1.12 attached hereto is a complete and correct list and brief description as of the date of this Agreement of all items of personal property owned or used by Trailmaster (such list identifying which of such properties are owned by Trailmaster and all of the leases, licenses or agreements under which Trailmaster is lessee or licensee or holds or operates any such property). *Trailmaster has good and marketable title to all properties and assets used by Trailmaster or held for use by Trailmaster in connection with the conduct of its business, other than leased or licensed property, including those properties and assets listed and described in Schedule 2.1.12 as owned property and assets,* in each case free and clear of any Liens, except for Liens described on Schedule 2.1.12 or arising from current taxes not yet due and payable. Each of the leases, licenses and agreements described in Schedule 2.1.12 is in full force and effect and constitutes a legal, valid and binding obligation of Trailmaster and the other respective parties thereto and is enforceable in accordance with its terms, and there is not under any of such leases, licenses or agreements existing any default of Trailmaster or of any other parties thereto.... [Emphasis added.]

Section 8.14 of the Agreement, titled "Survival of Representations and Warranties," provides that "all representations and warranties shall survive the Closing for a period of 15 months; provided, however, that ... the representations and warranties of Seller set forth in Sections 2.1.1, 2.1.2, 2.1.3, 2.1.5 and 2.1.6 hereof shall survive the Closing indefinitely."

■ Pentron and Frank warranted in Section 2.1.12 that Trailmaster had good and marketable title to all assets used by Trailmaster, including those assets listed in Schedule 2.1.12. Schedule 2.1.12 listed and described the cranes that Heil subsequently removed from the property leased from TE & J. We agree with Polar that Section 2.1.12 is the applicable provision under the facts of this case regarding Heil's breach of warranty claim. Heil's claim under this section, however, is expressly time-barred by the fifteen-month limitations period in Section 8.14.

We hold that the trial court did not err by granting Polar's motion for summary judgment on Heil's breach of warranty claim because Polar established that it was entitled to summary judgment on that claim as a matter of law. *See* Tex.R. Civ. P. 166a(c); *Grant,* 73 S.W.3d at 215. Accordingly, we overrule Heil's first issue to the extent Heil argues that the trial court erred by granting Polar's motion for summary judgment on Heil's breach of warranty claim, and we overrule Heil's second issue to the extent it argues that the trial court erred by denying its motion for summary judgment on its breach of warranty claim.

## V. Breach of Indemnity Contract

In its first issue, Heil argues that the trial court erred by granting Polar's motion for summary judgment on its breach of contract/contractual indemnity claim because a fact issue exists as to whether Polar complied with the indemnity procedures contained in the Agreement. In its second issue, Heil argues that the trial court erred by denying its motion for summary judgment on the same claim. We apply the identical rules of contract interpretation set forth above. *See Coker,* 650 S.W.2d at 393.

Section 7 of the Agreement contains an indemnification provision and accompanying procedures applicable thereto. Section 7.1(a), titled "Indemnification," states,

[Pentron and Frank] shall jointly and severally indemnify, defend and hold [Heil] harmless from and against any and all loss, cost, damage or expense whatsoever of or to [Heil] ... *resulting from or arising out of any breach* by either of any representation, warranty ... or covenant ... contained in [the Agreement]. [Emphasis added.]

Section 7.1(c), the indemnification procedures, provides in part,

> *In the event that any claim or demand for which [Pentron and Frank] would be liable to [Heil] under this Section 7.1 is asserted* against or sought to be collected by a third party, [Heil] shall ... notify [Pentron and Frank] of such claim or demand.... *[Pentron and Frank] shall have ten (10) days from receipt of the Claim Notice (the "Notice Period") to notify Purchaser whether or not [Pentron and Frank] dispute their liability to [Heil] hereunder* with respect to such claim or demand.... In the event that [Pentron and Frank] notify [Heil] within the Notice Period that [Pentron and Frank] do not dispute such liability, or *in the event [Pentron and Frank] fail to provide the required notification within the Notice Period, then* ... [Pentron and Frank] shall defend by appropriate proceedings. ... [Emphasis added.]

Heil sent an indemnification claim notice to Pentron and Frank on August 8, 2003, demanding that they indemnify, defend, and hold Heil harmless from the lawsuit and claims of TE & J. Heil claims that Polar's and Frank's designated agent received and signed for the notice on August 11, 2003. Heil sent a second claim notice to Pentron and Frank on or about August 22, 2003. Polar claims that it first received Heil's claim notice on August 25, 2003, and that its counsel notified Heil by telephone within ten days (on August 27, 2003) that Heil did not have an indemnifiable claim under the Agreement.

■ Heil argues that it is entitled to indemnity under the Agreement. Heil argues that Polar and Frank defaulted under Section 7.1(c) of the agreement because neither Pentron nor Frank provided notice to Heil disputing their indemnification obligation within ten days of August 11, 2003. Heil further argues that Polar's telephone notification on August 27, 2003, failed to comply with Section 8.3 of the Agreement, which requires that all notices be in writing.[6] Polar contends that the trial court properly granted its motion for summary judgment on Heil's breach of contract claim because Polar did not breach any warranty under the Agreement that was not time barred; thus, the indemnity provision was not triggered. Polar maintains that Section 7.1(c) "was not intended to create a[ ] situation in which the failure to respond to an unfounded indemnification demand would create an otherwise-nonexistent indemnification obligation." We agree with Polar.

The language used by the parties in Sections 7.1(a) and (c) is clear and unambiguous. The notification procedures contained in Section 7.1(c) do not become operative unless there is a claim or demand in which Pentron and Frank *would be liable* to Heil under Section 7.1(a). Under Section 7.1(a), Pentron's and Frank's indemnification obligation arises only if there is a *breach* of any of Pentron's and Frank's representations, warranties, or covenants under the Agreement.[7] We de-

---

6. Polar colorfully refers to this argument as an attempt to gain "gotcha" coverage.

7. Similar language is used in Section 7.1(b) of the Agreement: "Purchaser shall indemnify, defend and hold each Seller harmless from and against any and all Losses resulting from

termined above that the trial court properly denied Heil's breach of warranty claim under Sections 2.1.3 and 2.1.6 of the Agreement, and we also determined that the trial court did not err by granting Polar's motion for summary judgment on Heil's warranty claim because the limitations period under Section 2.1.12—the applicable warranty—expired fifteen months after the Agreement was entered into in October 1995. Because Polar was entitled to summary judgment as a matter of law on Heil's breach of warranty claim, Heil has not shown that there was a *breach*—using the word's plain and ordinary meaning—of any representation, warranty, or covenant under Section 7.1(a) that would trigger the indemnification procedures under Section 7.1(c). Accordingly, we hold that the trial court did not err by granting Polar's motion for summary judgment on Heil's breach of contractual indemnity claim because Polar conclusively established that it was entitled to summary judgment as a matter of law. *See* Tex.R. Civ. P. 166a(c); *Grant,* 73 S.W.3d at 215. We overrule Heil's first issue to the extent it argues that the trial court erred by granting Polar's motion for summary judgment on its breach of contract claim, and we overrule Heil's second issue to the extent it argues that the trial court erred by denying its motion for summary judgment on its breach of contract claim.

## VI. FRAUD AND NEGLIGENT MISREPRESENTATION

In its first issue, Heil argues that the trial court erred by granting Polar's motion for summary judgment on Heil's fraud and negligent misrepresentation claims. Heil argues that Polar was not entitled to summary judgment on Heil's fraud claim

or arising out of any *breach* of any representation, warranty or covenant of Purchaser con-

because Polar failed to cite any authority holding that proof of an independent injury is required to support a fraud claim and because Polar did not present any evidence in support of its motion. Polar contends that Heil's fraud and negligent misrepresentation claims are barred because it conclusively established that Heil did not suffer any independent injury apart from the subject matter of the Agreement and that it had no obligation to present evidence in order to negate those claims.

### A. Fraud

 Although a party's actions may breach duties in tort, contract, or both, Texas has long recognized that "mere nonfeasance under a contract creates liability only for breach of contract." *Crawford v. Ace Sign, Inc.,* 917 S.W.2d 12, 13 (Tex. 1996); *Jim Walter Homes, Inc. v. Reed,* 711 S.W.2d 617, 618 (Tex.1986). "When the injury is only the economic loss to the subject of a contract itself, the action sounds in contract alone." *Reed,* 711 S.W.2d at 618. Thus, tort damages are generally not recoverable unless the plaintiff suffers an injury that is independent and separate from the economic losses recoverable under a breach of contract claim. *See Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.,* 960 S.W.2d 41, 45–47 (Tex.1998); *Sw. Bell Tel. Co. v. DeLanney,* 809 S.W.2d 493, 494 (Tex.1991) (analyzing both the source of the duty and the nature of the remedy in determining a claim's characterization as sounding either in contract or tort); *see also Fed. Land Bank Ass'n v. Sloane,* 825 S.W.2d 439, 442–43 (Tex.1991) (adopting independent injury requirement of section 552B of the Restatement (Second) of Torts). The supreme court in *Formosa,* however, declined to apply the independent injury re-

tained in this Agreement."

quirement to a fraudulent inducement claim. *Formosa,* 960 S.W.2d at 47. The court held,

> [T]ort damages are recoverable for a fraudulent inducement claim irrespective of whether the fraudulent representations are later subsumed in a contract or whether the plaintiff only suffers an economic loss related to the subject matter of the contract. Allowing the recovery of fraud damages sounding in tort only when a plaintiff suffers an injury that is distinct from the economic losses recoverable under a breach of contract claim is inconsistent with this well-established law, and also ignores the fact that an independent legal duty, separate from the existence of the contract itself, precludes the use of fraud to induce a binding agreement.

*Id.*

■■■ Heil argues that *Formosa's* holding is not limited to fraudulent inducement claims and that "application of the independent injury rule to fraud as a whole has been expressly rejected by the Texas Supreme Court." We decline to adopt Heil's broad interpretation of *Formosa.* In *Formosa,* the claim at issue was *fraudulent inducement,* not fraud. *Id.* The court stated that Presidio brought a "fraudulent inducement of contract claim," that tort damages are recoverable for a "fraudulent inducement claim" in the circumstances described above, and that it disapproved of prior appellate court opinions holding that tort damages are not recoverable for a "fraudulent inducement claim" absent an injury that is distinct from any permissible contractual damages. *Id.* at 43, 47. Shortly thereafter, in *D.S.A., Inc. v. Hillsboro Independent School District* the court reasoned that "[t]he *Formosa* opinion's rejection of the independent injury requirement in *fraudulent inducement claims* does not extend to claims for negligent

misrepresentation." 973 S.W.2d 662, 663 (Tex.1998) (emphasis added). And in *R.E. Haase v. Glazner,* the court rejected Glazner's argument (which is very similar to Heil's argument) that "tort damages for fraud can be recovered even where the plaintiff suffers only economic loss related to the contract's subject matter." 62 S.W.3d 795, 798 (Tex.2001). The court reasoned,

> In *Formosa Plastics,* we concluded that Presidio could bring a fraudulent inducement claim even though its damages consisted only of economic losses related to the performance and subject matter of the parties' contract. Some of our language in that opinion suggests that there is no distinction between a claim for fraud and fraudulent inducement. Fraudulent inducement, however, is a particular species of fraud that arises only in the context of a contract and requires the existence of a contract as part of its proof. . . . *Formosa Plastics* involved a fraudulent inducement claim. . . . *Thus, the case was correctly decided as to fraudulent inducement.* Although economic losses may be recoverable under either fraud or fraudulent inducement, *Formosa Plastics* should not be construed to say that fraud and fraudulent inducement are interchangeable with respect to the measure of damages that would be recoverable.

*Id.* at 798–99 (emphasis added) (footnotes omitted).

In the instant case, Heil asserted a claim against Polar and Frank for "fraud," not fraudulent inducement. Heil alleged that "[t]he acts of Pentron and Frank in falsely representing that Trailmaster was the owner of the cranes at issue constitutes fraud." Heil neither alleges that Polar and Frank fraudulently *induced* it to enter into the Agreement, nor does Heil point to any such summary judgment evidence.

Heil does not even argue that it alleged a claim for fraudulent inducement. Consequently, the *Formosa* holding rejecting the independent injury requirement in fraudulent inducement claims is inapplicable under the facts of this case, thus leaving us with the standards articulated by the supreme court prior to *Formosa* in *DeLanney* and *Reed. See DeLanney,* 809 S.W.2d at 494; *Reed,* 711 S.W.2d at 618; *see also Castle Tex. Production Ltd. P'ship v. Long Trusts,* 134 S.W.3d 267, 274 (Tex.App.-Tyler 2003, pet. denied) ("[E]xcept [for a few] special contexts, and in the absence of independent injury, if a contract spells out the parties' respective rights regarding a particular matter, the contract, not common law tort principles, governs any dispute about that matter.").

Heil sought "[a]ctual damages incurred prior to Pentron and Frank's specific performance of their defense and indemnity obligations, or thereafter as consequential damages for their failure to timely defend and indemnify Heil," and punitive damages for fraud and negligent misrepresentation. "When the only loss or damage is to the subject matter of the contract, the plaintiff's action is ordinarily on the contract." *DeLanney,* 809 S.W.2d at 494. Heil's alleged damages or losses arise from the subject matter of the contract, and Heil has not alleged that it suffered any loss independent of its contract damages. Therefore, in the absence of an independent injury, Heil's cause of action sounds only in contract and not in tort.

**B. Negligent Misrepresentation and Summary Judgment Evidence Burden**

As Polar points out, unlike with its fraud claim, Heil does not contest that its claim for negligent misrepresentation is barred by the independent injury rule. Heil instead argues that summary judgment was improperly granted on its negligent misrepresentation claim because Polar and

Frank failed to produce any evidence in support of Polar's traditional motion for summary judgment. Heil asserts this same argument with regard to its fraud claim.

■ In general, it is improper to grant a summary judgment on a deficient pleading's failure to state a cause of action when the deficiency can be attacked through a special exception. *In re B.I.V.,* 870 S.W.2d 12, 13 (Tex.1994); *Pietila v. Crites,* 851 S.W.2d 185, 186 n. 2 (Tex.1993); *Massey v. Armco Steel Co.,* 652 S.W.2d 932, 934 (Tex. 1983); *Tex. Dep't of Corrections v. Herring,* 513 S.W.2d 6, 9–10 (Tex.1974). However, when the pleading deficiency is the type that cannot be cured by an amendment, a special exception is unnecessary and a summary judgment based on the pleading's failure to state a legal claim is in order. *See Friesenhahn v. Ryan,* 960 S.W.2d 656, 658 (Tex.1998).

■ Heil is unable to state a cause of action for fraud as a matter of law because it has suffered no independent injury. Moreover, as we mentioned above, *Formosa's* rejection of the independent injury requirement in fraudulent inducement claims does not extend to claims for negligent misrepresentation. *See Hillsboro ISD,* 973 S.W.2d at 663. Therefore, the trial court did not err by granting Polar's motion for summary judgment in the absence of supporting summary judgment evidence because Heil is unable to state a claim for fraud and negligent misrepresentation. *See Friesenhahn,* 960 S.W.2d at 658.

We hold that the trial court did not err by granting Polar's motion for summary judgment on Heil's fraud and negligent misrepresentation claims because Polar conclusively established that it was entitled to summary judgment as a matter of law. *See* Tex.R. Civ. P. 166a(c); *Grant,* 73

S.W.3d at 215. Accordingly, we overrule Heil's first issue to the extent Heil argues that the trial court erred by granting Polar's motion for summary judgment on Heil's fraud and negligent misrepresentation claims.

## VII. DECLARATORY JUDGMENT

In its first issue, Heil argues that the trial court erred by granting Polar's motion for summary judgment on its claim for declaratory relief. In its first amended third-party petition, Heil sought a declaratory judgment finding and declaring the following:

> (a) Plaintiff's claims against Heil, if true, constitute a breach by Pentron and Frank of express and continuing warranties including warranties 2.1.3 and 2.1.6 and schedule 2.1.12 of the Stock Purchase Agreement; (b) Plaintiff's claims herein constitute a claim or demand for which Pentron and Frank are liable to defend, indemnify and hold Heil harmless under section 7.1 of the Stock Purchase Agreement; and (c) Pentron and Frank did not provide timely notice to Heil disputing their liability and obligation to defend and indemnify Heil as required under sections 7.1 and 8.3 of the Stock Purchase Agreement.

Polar argues that it is entitled to summary judgment because there was no breach of the Agreement. We agree.

Regarding part (a), we determined that the trial court did not err by granting Polar's summary judgment motion on Heil's breach of warranty claim because Sections 2.1.3 and 2.1.6 are inapplicable and because Heil's claim under 2.1.12 is time barred. Thus, Polar was entitled to summary judgment as a matter of law. Regarding parts (b) and (c), we determined that the trial court did not err by granting Polar's motion for summary judgment on Heil's breach of contract claim

because Polar did not "breach" the Agreement; thus, the procedures articulated in Section 7.1(c) were not triggered. Therefore, because Polar is entitled to summary judgment as a matter of law on the claims underlying the declarations sought by Heil, Polar is entitled to summary judgment as a matter of law on Heil's claim for declaratory relief. The trial court did not err by granting Polar's motion for summary judgment on Heil's declaratory judgment claim. Accordingly, we overrule Heil's first issue to the extent Heil argues that the trial court erred by granting Polar's motion for summary judgment on Heil's claim for declaratory relief.

## VIII. JOINDER OF FRANK IN POLAR'S MOTION FOR SUMMARY JUDGMENT

In the final argument of its first issue, Heil argues that the trial court improperly granted summary judgment in favor of Frank because Frank did not move for summary judgment. Heil thus contends that we must reverse and remand the trial court's judgment as it pertains to Frank. We agree.

A court may not render summary judgment in favor of a party to the suit in the absence of a motion for summary judgment seeking that relief. *See Mitchell v. Baylor Univ. Med. Ctr.*, 109 S.W.3d 838, 844 (Tex.App.-Dallas 2003, no pet.); *Ulloa v. Davila*, 860 S.W.2d 202, 204–05 (Tex. App.-San Antonio 1993, no writ).

Here, the trial court's order on the motions for summary judgment provides that Frank joined in Polar's motion for summary judgment. The order states, "The Court having considered the motions and briefs, the supporting affidavits, the joinder of Defendant Richard L. Frank in the Polar Motion, and the arguments of counsel, concludes as follows:...." Heil and Polar, however, filed a joint postsubmission brief stating that although they locat-

ed filed documents evidencing Frank's joinder in two *oppositions* to Heil's cross-motions for summary judgment, they "failed to locate any document filed by Mr. Frank showing any joinder" in Polar's motion for summary judgment. Although the brief indicates that Frank's counsel "attended and participated" in the hearing on the cross-motions for summary judgment, the record does not show that Frank joined in Polar's motion for summary judgment or that Frank filed his own motion for summary judgment.[8] There is no evidence in the record before us demonstrating that Frank joined in Polar's motion for summary judgment, as the trial court's order indicates. Accordingly, we sustain Heil's first issue to the extent it argues that the trial court erred by granting summary judgment in favor of Frank.

### IX. SUMMARY JUDGMENT EVIDENCE

In its third issue, Heil argues that the trial court abused its discretion by overruling Heil's objections to an affidavit submitted by Polar in support of Polar's motion for summary judgment. Heil argues that the trial court judicially revised the affidavit and that the revised testimony is not sworn and is conclusory.

Polar submitted the affidavit of Don Stover as evidence establishing when Polar actually received Heil's indemnity claim notice. The affidavit is only relevant, however, to issues regarding indemnity notice under section 7.1(c) of the Agreement—a section that we determined did not become operative because Polar did not breach any of the representations or warranties complained of by Heil. Therefore, because the trial court could have determined that Polar was entitled to summary judgment as a matter of law on Heil's breach of contract

claim without considering the objectionable portions of Stover's affidavit, we need not ascertain whether the trial court abused its discretion by overruling Heil's objections thereto. We overrule Heil's third issue.

### X. CONCLUSION

We affirm the trial court's judgment granting Polar's motion for summary judgment as to Polar, and we affirm the trial court's judgment denying Heil's cross-motion for summary judgment. We reverse and remand for further proceedings in the trial court that part of the trial court's judgment granting summary judgment in favor of Frank.

---

8. And on appeal, Frank neither filed a brief joining Polar's brief, nor did he file his own

appellate brief.