

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 2-08-412-CV

MCPHERSON ROAD BAPTIST
CHURCH

APPELLANT

V.

MISSION INVESTORS/FORT
WORTH, LP

APPELLEE

------------

FROM COUNTY COURT AT LAW NO. 2 OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. INTRODUCTION

Appellant McPherson Road Baptist Church appeals the trial court's
granting Appellee Mission Investors/Fort Worth, LP's motions for traditional and
no-evidence summary judgment regarding McPherson's claims related to

---

[1] *See* Tex. R. App. P. 47.4.

Mission's reservation of mineral rights to land conveyed to McPherson. McPherson raises seven issues. We will affirm in part and reverse and remand in part.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On February 18, 2003, McPherson and Mission signed an earnest money contract where Mission would sell McPherson a "+/− 4-Acre tract of land located along McPherson Road in the City of Fort Worth, Tarrant County, Texas." The contract stated that a "rough outline" of the property was to be attached to the contract as "Exhibit 'A.'" The contract also stated that the property would be "further described by a Survey to be completed prior to Closing." The contract specified that McPherson would have the land surveyed before the closing date specified in the contract—March 21, 2003.

By its terms, the contract's closing date could be extended by written notice of either party up to a maximum of thirty days, which would have been April 20, 2003. The contract also contained a provision entitled "Time For Performance" that stated, "Time is of the essence under each provision of this Contract. Strict compliance with the times for performance is required."

2

As part of the earnest money contract, McPherson deposited $5,000 in earnest money with Commonwealth Land Title Company.[2]  The contract provided, "At the Closing, the Earnest Money will be applied to the Purchase Price."  Per the contract, the purchase price for the property was $52,500; and McPherson was to pay $12,500 in cash "payable at Closing."  The contract also contained a seller financing addendum.  By the addendum's terms, McPherson would execute a promissory note at closing payable to Mission in the amount of $40,000 (the non-cash portion of the purchase price) bearing 7.5% interest.  The interest was to be compounded monthly, and the terms of the promissory note were that McPherson would pay $500 monthly for the first thirty months after purchase and then $1,500 monthly "thereafter until the Promissory Note is paid in full."  The contract expressed that Mission was to deliver "fee simple title" to McPherson.  Nowhere in the contract is there an express reservation of mineral rights to Mission.

---

[2] McPherson originally sued Mission, attorney Michael W. Broome, Michael W. Broome, P.C., Commonwealth Land Title Insurance Company, and Mission Partners, Inc.  Broome's relationship to the transaction is not entirely clear from the record, but McPherson nonsuited its claims against Broome on March 13, 2008.  McPherson also nonsuited its claims against Mission Partners, Inc. on July 7, 2008.  In what appears to be a coordinated effort by both parties' attorneys and the trial court, the trial court allowed McPherson to sever its claims against Commonwealth into a separate cause of action and Mission nonsuited its counterclaims against McPherson so that the order granting summary judgment would be final and appealable.

For reasons that are not clear from the record, the March 21, 2003 closing date passed without the parties closing on a land sale transaction. But on April 23, 2003, the parties completed a sale of a 4.101-acre tract of land from Mission to McPherson. Except for the closing date, the April 23, 2003 closing transaction mirrored the terms of the February 18, 2003 earnest money contract. At the April 23, 2003 closing, both parties executed a set of documents, including a warranty deed with vendor's lien and a standard settlement statement. The settlement statement reflects that the purchase price was $52,500; that Mission's $5,000 earnest money was applied to the purchase; that the terms of the note carried would be consistent with those proposed in the February18, 2003 earnest money contract; and that Mission paid for and provided a survey of the land being conveyed. Patricia Galttana, an escrow officer for Commonwealth, filed a warranty deed executed on April 23, 2003, to record the conveyance of the 4.101-acre tract to McPherson—the deed had an express reservation of mineral rights retained by Mission. At some point after its recording, the county clerk's office sent a copy of the recorded deed to McPherson.[3]

_____

[3] James William Hardin, McPherson's pastor, testified in his deposition that McPherson had received the deed "60 days or so after" the April 23, 2003 closing.

4

On December 15, 2006, McPherson filed suit against Mission and others alleging breach of contract, common law and statutory fraud, and civil conspiracy. All of McPherson's claims relate to McPherson's allegation that Mission improperly retained the mineral rights to the land conveyed in violation of the parties' agreement. Neither the February 18, 2003 earnest money contract nor any other document in the summary judgment evidence purporting to evidence the agreement between the parties indicates an intent to reserve the mineral estate to Mission. The only reference to the mineral rights is in the deed.

Mission answered and filed a traditional motion for partial summary judgment. Mission's postural stance throughout these proceedings has been that there exist two distinct contracts—a contract in February and a contract in April. In its initial traditional motion for partial summary judgment, Mission argued that the February contract was unenforceable as a matter of law because the closing date was missed, McPherson had not provided a survey on the date detailed in the February contract, and the contract lacked an adequate legal description. Mission further moved for summary judgment on McPherson's fraud-related claims but limited its motion to the February contract, specifically arguing that Mission's fraud claims were extra-contractual claims barred by the statute of frauds. In its response to Mission's summary

5

judgment motion, McPherson countered that there existed fact questions concerning: the terms of the parties' closed transaction; whether the parties closed under the February 18, 2003 earnest money contract or some oral extension or modification of that contract; whether the closing that transpired was in accordance with the February 18, 2003 earnest money contract; and whether the draft deed presented to Mission prior to the April 23, 2003 closing was changed without the knowledge of or notice to McPherson and was different than the deed recorded.

On August 6, 2008, the trial court entered an interlocutory order granting Mission's motion for partial summary judgment. The trial court's order specifically stated that it "shall have no effect on [McPherson's] claims . . . in connection with the April 23, 2003 real estate closing, insofar as such claims are not based upon attempted enforcement of the February 18, 2003 real estate contract."

On September 9, 2008, Mission filed a second motion for summary judgment, alleging that it was entitled to traditional and no-evidence summary judgment on McPherson's remaining claims. McPherson responded that Mission was improperly trying to paint the transaction between the parties *"out into a mini series of events"* rather than looking at the "factual background in this case . . . *in toto*" and that there existed genuine issues of material fact on

6

each of its claims. On October 9, 2008, the trial court granted Mission's second summary judgment motion. This appeal followed.

## III. DISCUSSION

In seven issues, McPherson argues that the trial court erred in granting Mission's traditional and no-evidence summary judgments pertaining to McPherson's claims for statutory and common law fraud, breach of contract, and civil conspiracy.

### A. Standards of Review for Traditional Summary Judgment

In a summary judgment case, the issue on appeal is whether the movant met the summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Sw. Elec. Power Co. v. Grant,* 73 S.W.3d 211, 215 (Tex. 2002); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979). The burden of proof is on the movant, and all doubts about the existence of a genuine issue of material fact are resolved against the movant. *Sw. Elec. Power Co.,* 73 S.W.3d at 215.

When reviewing a summary judgment, we examine the entire record in the light most favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *City of Keller v. Wilson*,

7

168 S.W.3d 802, 822–24 (Tex. 2005). Evidence that favors the movant's position will not be considered unless it is uncontroverted. *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex. 1965). If the uncontroverted evidence is from an interested witness, it does nothing more than raise a fact issue unless it is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted. Tex. R. Civ. P. 166a(c); *Trico Techs. Corp. v. Montiel*, 949 S.W.2d 308, 310 (Tex. 1997). But in reviewing the summary judgment evidence, we must consider whether reasonable and fair-minded jurors could differ in their conclusions in light of all of the evidence presented. *See Wal-Mart Stores, Inc. v. Spates*, 186 S.W.3d 566, 568 (Tex. 2006); *Wilson*, 168 S.W.3d at 822–24. The summary judgment will be affirmed only if the record establishes that the movant has conclusively proved all essential elements of the movant's cause of action or defense as a matter of law. *Clear Creek Basin Auth.*, 589 S.W.2d at 678.

A defendant who conclusively negates at least one essential element of a cause of action is entitled to summary judgment on that claim. *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004). Once the defendant produces sufficient evidence to establish the right to summary judgment, the burden shifts to the plaintiff to come forward with

8

competent controverting evidence raising a genuine issue of material fact with regard to the element challenged by the defendant. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995).

## B.  Breach of Contract

In its first, fourth, and fifth issues, McPherson argues that the trial court erred by granting Mission's motions for traditional summary judgment pertaining to McPherson's breach of contract claim.  Although McPherson's first and fifth issues are couched in terms of evidentiary matters, this court agrees with Mission's characterization that in these three issues McPherson is challenging the propriety of the trial court's granting Mission's first and second motions for traditional summary judgment regarding McPherson's breach of contract claim.  The focus of McPherson's breach of contract claim is that Mission failed to perform its duties under the contract for sale of the 4.101-acre tract of land when Mission conveyed the land to McPherson but reserved the mineral rights.

The essential elements of a breach of contract claim are:  (1) the existence of a valid contract, (2) performance or tendered performance by the plaintiff, (3) breach of the contract by the defendant, and (4) resulting damages to the plaintiff. *Harris v. Am. Prot. Ins. Co.,* 158 S.W.3d 614, 622–23 (Tex. App.—Fort Worth 2005, no pet.).  Thus, to prove an action for breach of

9

contract, a plaintiff must establish the existence of a valid and enforceable contract. *Id*.

A valid and binding contract is formed by: (1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with the intent that it be mutual and binding. *Critchfield v. Smith*, 151 S.W.3d 225, 233 (Tex. App.—Tyler 2004, pet. denied) (citing *Wal-Mart Stores, Inc. v. Lopez*, 93 S.W.3d 548, 555–56 (Tex. App.—Houston [14th Dist.] 2002, no pet.)). Whether the parties intended to enter into an agreement is generally a question of fact. *Meru v. Huerta*, 136 S.W.3d 383, 390 (Tex. App.—Corpus Christi 2004, no pet.). Whether a particular agreement is an enforceable contract is generally a question of law. *Id*.

In this case, through its motions for summary judgment, Mission challenged the existence of a valid contract that promised to convey the mineral rights to McPherson. Mission attempts to lay the predicate that the February 18, 2003 written agreement was not a valid contract and thus should be precluded from being considered to answer the question of whether the agreement was that Mission would convey to McPherson the mineral rights to the 4.101-acre tract of land. Mission challenges the validity of the February 18, 2003 earnest money contract in two ways. First, Mission argues that the

10

February 18, 2003 earnest money contract had expired by its own terms. Second, Mission argues that the statute of frauds bars the enforcement of the February 18, 2003 earnest money contract because it lacks an adequate legal description. McPherson argues that it is for a jury to determine what the agreement between the parties was and that the agreement was partially written, as evidenced by the February 18, 2003 earnest money contract, and partially oral, as evidenced by alleged statements made by Mission to McPherson, with the agreed closing date in the transaction between the parties being the April 23, 2003 closing. We will address Mission's arguments in turn.

### 1. The Earnest Money Contract's Expiration Terms

Ordinarily, time is not of the essence in the performance of a real estate earnest money contract absent a clear intent to the contrary. *Glass v. Anderson*, 596 S.W.2d 507, 511 (Tex. 1980). This is true even if the contract specifies a date for performance or sets a date for the closing. *Atkin v. Cobb*, 663 S.W.2d 48, 52 (Tex. App.—San Antonio 1983, writ dism'd.). In a time-is-of-the essence contract, however, a party must perform or tender performance in strict compliance with the provisions of the contract and within the time prescribed in order to be entitled to specific performance. *Roundville Partners, L.L.C. v. Jones*, 118 S.W.3d 73, 79 (Tex. App.—Austin 2003, pet. denied). But a time-is-of-the-essence provision in a contract can be waived. *17090*

11

*Parkway, Ltd. v. McDavid*, 80 S.W.3d 252, 255 (Tex. App.—Dallas 2002, pet. denied).

Waiver is an intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right. *Cont'l Casing Corp. v. Siderca Corp.*, 38 S.W.3d 782, 789 (Tex. App.—Houston [14th Dist.] 2001, no pet.). Waiver may be written or oral, and it may be shown by circumstances or course of dealing. *Carpet Servs., Inc. v. George A. Fuller Co. of Tex.*, 802 S.W.2d 343, 346 (Tex. App.—Dallas 1990), *aff'd*, 823 S.W.2d 603 (Tex. 1992). Waiver can be established by a party's express renunciation of a known right, or by silence or inaction for so long a period as to show an intention to yield the known right. *Aguiar v. Segal*, 167 S.W.3d 443, 451 (Tex. App.—Houston [14th Dist.] 2005, pet. denied). Because waiver is largely a matter of intent, for implied waiver to be found through a party's actions, intent clearly must be demonstrated by the surrounding facts and circumstances. *Id*.

In this case, Mission first argues that the February 18, 2003 earnest money contract expired under its own terms because there was a defined date for closing and an express provision detailing that time is of the essence. Thus, Mission argues, because the date of closing in the February 18, 2003 earnest money contract "came and went," the contract terminated by its own terms and is therefore not enforceable.

12

McPherson contends that Mission never attempted to terminate the contract. Specifically, McPherson argues that Mission never sent notice that the contract was terminated nor made any demand for a return of McPherson's earnest money.

Rhonda Toomer, McPherson's real estate agent, pledged in her affidavit that Mission never made an objection, either verbal or written, to the extension of the closing date. Toomer also avowed that Mission never demanded that the earnest money—deposited at the title company consistent with the February 18, 2003 written agreement—be forfeited by McPherson's failure to close on March 21, 2003, or in any way appeared reluctant to sell the property to McPherson. James William Hardin, McPherson's pastor, pledged that Mission Partners, Inc.'s vice president Gary Frederick had assured him that the time for closing the transaction was not paramount, the date had been put in the earnest money contract merely as a formality, and any delay in closing would not be "a problem."

Mission also argues that the February 18, 2003 earnest money contract expired by its own terms because McPherson did not complete a survey by March 10, 2003—the date stated in the earnest money contract. But Hardin pledged in his affidavit that Mission had informed him that the survey not being completed by March 10 would not be a hurdle to closing the transaction.

13

Furthermore, both parties agree that McPherson did pay for and furnish a survey for the April closing.

We conclude that McPherson produced competent controverting evidence to Mission's stance that the February 18, 2003 earnest money contract had expired by its own terms. There are genuine issues of material fact concerning whether Mission, through its course of dealings with McPherson and its failure to claim the right that the February 18, 2003 earnest money contract had expired prior to closing, waived the closing-date requirement, the time-is-of-the-essence provision, and the survey requirement. *See Roundville*, 118 S.W.3d at 79.

### 2. The Property Description in the Earnest Money Contract

To be valid, a conveyance of real property must contain a sufficient description of the property to be conveyed. Tex. Bus. & Com. Code Ann. § 26.01(b)(4) & cmt. (Vernon 2009). A property description is sufficient if the writing furnishes within itself, or by reference to some other existing writing, the means or data by which the particular land to be conveyed may be identified with reasonable certainty. *See AIC Mgmt. v. Crews*, 246 S.W.3d 640, 645 (Tex. 2008); *see also Broaddus v. Grout*, 152 Tex. 398, 402, 258 S.W.2d 308, 309 (1953); *Smith v. Sorelle*, 126 Tex. 353, 357, 87 S.W.2d 703, 705 (1935). The description of the land may be obtained from documents

14

that are prepared in the course of the transaction, even if those documents are prepared after the contract for sale is entered into. *See Porter v. Reaves*, 728 S.W.2d 948, 949 (Tex. App.—Fort Worth 1987, no writ); *see also Jones v. Kelley*, 614 S.W.2d 95, 98 (Tex. 1981). For example, in *Porter*, this court held that a ten-acre tract of land to be conveyed under a land sale contract was adequately described to satisfy the statute of frauds even though the contract stated that "1/2 of a 20-acre tract" of land was being conveyed. *Porter*, 728 S.W.2d at 949. This court held so because the location of the tract of land was not in question, the parties had referenced a drawing of the ten-acre tract being conveyed in the contract, and the seller was required to furnish a "current survey" of the land being conveyed which was furnished after the land sale contract had been completed. *Id*.

In this case, we conclude that the land was adequately described in the February 18, 2003 earnest money contract to satisfy the statute of frauds. The earnest money contract states that a "+/− 4-Acre tract of land located along McPherson Road in the City of Fort Worth, Tarrant County, Texas" was being conveyed. The contract references a drawing of the property.[4] The drawing contains a diagram of the land to be conveyed that would allow a

---

[4] Mission provided the drawing as evidence to support its first summary judgment motion.

15

location of the land. McPherson paid for and provided a survey. A 4.101-acre tract of land was described by metes and bounds in the real estate lien note and warranty deed with vendor's lien. And the parties closed the transaction in accordance with the terms of the earnest money contract entered into on February 18, 2003. We hold that the February 18, 2003 earnest money contract provided the means and data to identify with reasonable certainty the particular land that was ultimately conveyed. *See Crews*, 246 S.W.3d at 645.

We sustain McPherson's first, fourth, and fifth issues to the extent that McPherson is challenging the trial court's granting Mission's first and second summary judgments as to McPherson's breach of contract claim because there exist genuine issues of material fact about whether the parties had agreed to extend the February 18, 2003 earnest money contract's closing date and whether Mission breached that contract.

## C. McPherson's Common Law and Statutory Fraud Claims

In its second issue, McPherson argues that the trial court erred in granting Mission's traditional motions for summary judgment on McPherson's common law and statutory fraud claims. Mission argues, as it did in its second motion for summary judgment, that McPherson is attempting to improperly bring a tort claim and that it cannot do so because the only injury McPherson actually

16

claims is the economic loss subject to the contract between the parties. We agree with Mission.

### 1. Common Law Fraud

In determining whether an action sounds in contract or tort, we look first to the source of the duty to act. *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991). In performing this task, we must look to the substance of the cause of action and not necessarily to the manner in which the action was pleaded. *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 617–18 (Tex. 1986) ("When the injury is only the economic loss to the subject of a contract itself, the action sounds in contract alone."). A claim ordinarily sounds in contract if the conduct in question gives rise to liability only as a breach of an agreement between the parties. *DeLanney*, 809 S.W.2d at 494.

We next consider the nature of the remedy or damages sought by the claimant. *Id*. As the supreme court explained in *Reed*, the nature of the injury most often determines the duty breached; when the injury is only the economic loss to the subject of a contract itself, the action sounds in contract alone. *Reed*, 711 S.W.2d at 618.

Even though McPherson's pleadings include loose allegations of misrepresentations, omissions, and the concealment of a deed switch after closing, the essence of McPherson's claims is that it was to receive the mineral

17

rights on the 4.101-acre tract of land Mission conveyed at the April closing, and it did not. Thus, McPherson's claim is that Mission breached its alleged contractual obligation to convey the mineral rights, and the remedy that McPherson ultimately seeks is the conveyance of those rights. Accordingly, McPherson cannot recover tort damages in this case because Mission's alleged conduct does not give rise to liability independent of the alleged contract between McPherson and Mission. *See Heil Co. v. Polar Corp.*, 191 S.W.3d 805, 810 (Tex. App.—Fort Worth 2006, pet. denied). We hold that the trial court did not err in granting Mission's traditional summary judgment regarding McPherson's common law fraud claim.

### 2. Section 27.01

Section 27.01 of the business and commerce code provides a statutory cause of action for fraudulent inducement in real estate transactions. Tex. Bus. & Com. Code Ann. § 27.01 (Vernon 2009). But just as McPherson cannot claim common law fraud, it likewise cannot claim statutory fraud in connection with its claim that Mission breached its contractual promise to convey the mineral rights. *See Weinacht v. Phillips Coal Co.*, 673 S.W.2d 677, 680–81 (Tex. App.—Dallas 1984, no writ). In order for section 27.01 to apply to a transaction in real estate, the false promise must relate to something which is collateral, and it must not be the consideration of the very contract, for breach

18

of which a party sues. *Id.* In determining whether the promise is collateral to the land transaction in question, we must always look to the nature of the alleged false promise. *Id.* Substance, and not form, is the test in determining whether the promise is collateral. *Id.* To be collateral, the agreement must be such that the parties would naturally make it separate from the contract and would not ordinarily be expected to embody the collateral promise in writing; and it must not be so clearly connected with the principal transaction as to be part and parcel of it. *See id.; see also Leyendecker v. Strange*, 204 S.W.2d 845, 847 (Tex. Civ. App.—Galveston 1947, writ ref'd n.r.e.).

In this case, Mission's alleged contractual promise to convey the mineral rights to McPherson would not make a separate agreement collateral to the conveyance of the land. The mineral rights are clearly connected to the principal transaction of the land conveyance. *See id.* Thus, McPherson cannot bring a claim under section 27.01 of the business and commerce code. We hold that the trial court did not err by granting Mission's summary judgment regarding McPherson's statutory fraud claim. We overrule McPherson's second issue. *See Weinacht*, 673 S.W.2d at 680. Having overruled McPherson's second issue, we decline to address McPherson's third issue pertaining to damages under McPherson's common law and statutory fraud claims.

19

**D.    McPherson's Civil Conspiracy Claim**

In its seventh issue, McPherson argues that the trial court erred by granting summary judgment regarding its civil conspiracy claim.  McPherson asserts that its claim was not barred by the two-year statute of limitations because it did not learn of the civil conspiracy until March 2008.  *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.003 (Vernon Supp. 2008); *Childs v. Haussecker*, 974 S.W.2d 31, 40 (Tex. 1998).

The general rule is that a cause of action accrues when a wrongful act causes some legal injury, even when the fact of injury is not discovered until later, and even if all of the resulting damages have not yet occurred.  *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996).  In some cases, however, the discovery rule may defer accrual of a cause of action until the plaintiff knew or, by exercising reasonable diligence, should have known of the facts giving rise to a cause of action.  *HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 886 (Tex. 1998).  In order for the discovery rule to apply, the nature of the injury must be inherently undiscoverable and the injury itself must be objectively verifiable.  *Id*.  The discovery rule is an independent ground of defense.  *Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 518 (Tex. 1988).

A defendant moving for summary judgment on the affirmative defense of limitations has the burden to conclusively establish that defense.  *KPMG Peat*

20

*Marwick v. Harrison County Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999). Thus, to be entitled to summary judgment, Mission had to (1) conclusively prove when the civil conspiracy cause of action accrued and (2) negate the discovery rule, if it applies, by proving as a matter of law that there is no genuine issue of material fact about when McPherson discovered, or in the exercise of reasonable diligence should have discovered, the nature of its alleged injury. *See id*.

The summary judgment evidence establishes that McPherson received the deed reserving mineral rights to Mission after it was recorded in 2003. McPherson filed its original petition asserting civil conspiracy on December 15, 2006. Thus, even if the discovery rule applies, Mission has shown that there is no genuine issue of material fact that McPherson, in the exercise of reasonable diligence, should have discovered that Mission had not conveyed the mineral rights when the deed was recorded and sent to McPherson in 2003. Therefore, the trial court did not err by granting summary judgment that McPherson's civil conspiracy claim was barred by the two-year statute of limitations. We overrule McPherson's seventh issue.

21

**E.    Attorney's Fees**

In its sixth issue, McPherson argues that the trial court erred by granting summary judgment in favor of Mission on the issue of attorney's fees. We agree.

McPherson pleaded that it was entitled to attorney's fees under civil practice and remedies code section 38.001, which provides that "[a] person may recover reasonable attorney's fees . . . if the claim is for . . . an oral or written contract." Tex. Civ. Prac. & Rem. Code Ann. § 38.001 (Vernon 2008). Because we sustain McPherson's issues related to its breach of contract claim, it is still undetermined who will be the prevailing party on that claim.

If McPherson prevails in a trial on the merits, it could be entitled to attorney's fees. *See id.; see also Toshiba Mach. Co., Am. v. SPM Flow Control, Inc.*, 180 S.W.3d 761, 783 (Tex. App.—Fort Worth 2005, pet. granted, judgm't vacated w.r.m.) (discussing the factors considered when a party may recover reasonable attorney's fees for a valid breach of contract claim). Therefore, we also sustain McPherson's sixth issue and remand the issue of attorney's fees back to the trial court pending the ultimate determination of McPherson's breach of contract claim.

22

## IV. CONCLUSION

Having sustained McPherson's first, fourth, and fifth issues, we reverse and remand McPherson's breach of contract claim to the trial court for proceedings consistent with this opinion. Also, having sustained McPherson's sixth issue, we reverse and remand McPherson's claim regarding attorney's fees. Having overruled McPherson's second issue relating to its statutory and common law fraud claims, having overruled McPherson's seventh issue regarding its civil conspiracy claim, and not addressing McPherson's third issue regarding the trial court's granting Mission's no-evidence summary judgment on damages related to McPherson's statutory and common law fraud claims, we affirm the trial court's judgment on these issues.

PER CURIAM

PANEL: MEIER, WALKER, and MCCOY, JJ.

DELIVERED: August 20, 2009

23